BILL SPADACHENE V. THE STATE.

No. 19648. Delivered June 22, 1938.
Rehearing Denied May 3, 1939.

The opinion states the case.

*E. A. Berry,* of Houston, *Lamar Bethea,* of Bryan, and *Bush & Parten,* of Franklin, for appellant.

*W. R. Allen* and *F. L. Henderson,* both of Bryan, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for murder; the punishment, confinement in the state penitentiary for a term of fifteen years.

The record shows that the appellant was the owner and operator of a beer tavern in connection with which food was served. The deceased, O'Grady, and his companions, Ethridge and McCoy, were employees of a circus which, on the date in question, was in the town of Bryan. Ethridge and the deceased went to the appellant's place of business and ordered some food and drinks. Some unpleasantness arose between the deceased and one J. D. Roberts which resulted in an altercation in which the deceased slapped Roberts. Appellant remonstrated with the deceased and restored order. Later on McCoy came into the place and a difficulty arose between the deceased and McCoy in which beer bottles were thrown. McCoy was struck on the head as he was going out of the door and was knocked down. Another bottle was hurled through a plate glass window, breaking it. At this juncture, deceased and Ethridge left the place. In doing so, they stepped over the body of McCoy which was lying in the doorway. After they had gotten out on the sidewalk, appellant followed them and opened fire with a pistol. The first shot struck near their feet and the second took effect in the side of the deceased, resulting in his death in a very short time.

It was the State's theory that the killing on the part of the appellant was entirely unjustified and was done while the deceased was leaving the premises. The defensive theory, as testified to by appellant and corroborated by other witnesses, was that appellant attempted to quell the disturbance that McCoy and the deceased had created. That he heard the bottle crash through the window, but did not know who threw it. That as he looked around, he saw McCoy lying in the doorway and the deceased and Ethridge making for the doorway. That he interceded and requested them not to kick McCoy any more. Whereupon the deceased caught him by the shirt and jerked him out on the sidewalk and struck at him with something. That he jerked loose from the deceased, drew his gun and ordered him to stand back, but the deceased continued to advance upon him and he then fired one shot into the street. Notwithstanding this admonition, the deceased continued to advance and he then shot him. Appellant also testified that he did not know who threw the bottle through the window, but that it happened before Ethridge and the deceased walked out.

Bill of exception number one reflects the following occurrence. During the examination of prospective jurors on their voir dire and after the juror, Frame, had been accepted by both the State and the defendant and while Frame was being sworn in, the State challenged the juror. The court sustained

the challenge and appellant objected. The court overruled the objection and appellant excepted. The bill fails to show whether the State peremptorily challenged the juror or whether it challenged him for good cause. In the absence of any showing in the bill to the contrary, the presumption obtains in favor of the correctness of the court's ruling; that is that the State challenged the juror for good cause not known to it before its acceptance of the juror. If the bill had shown a peremptory challenge by the State, a different situation would have been presented. See Baker v. State, 3 Tex. Crim. Rep., 525. In all of the cases cited by appellant, including the above named case, it appears that a challenge for good cause may be made after the juror is accepted and before he is impaneled. There is nothing in appellant's bill of exception which controverts the presumption that the court's ruling was legally correct and justified by the law.

By bill of exception number seven, appellant complains of the action of the trial court in permitting the State to recall appellant's witness, Mrs. Pearl Mimms, for the purpose of laying a predicate for impeachment. It is true that they did contradict her by Mrs. Boyd. However, it is a well recognized rule of long standing in this State that a defendant, or any other witness, may be recalled for further cross-examination, or for the purpose of laying a predicate to impeach said witness. The recalling of the witness does not, of itself, make him the witness of the party recalling him. See Branch's P. C., Sec. 354 and authorities there cited. See also Butler v. State, 7 Tex. Crim. Rep., 635; Hunter v. State, 8 Tex. Crim. Rep. 75; Treadway v. State, 144 S. W., 655; Bolden v. State, 178 S. W. 533.

The matter complained of in bill of exception number five fails to reflect reversible error. It appears from the bill that in response to a question by the district attorney, appellant answered that he did not know whether or not he had been indicted for the offense of an assault with intent to murder. However, the State promptly withdrew its question and the court instructed the jury not to consider it for any purpose.

By bill of exception number ten, appellant complains because the court declined to instruct the jury with reference to the law of appellant's right to protect his property from destruction. This issue was not raised by the evidence. The uncontradicted testimony shows that the window was broken before the deceased and Ethridge left appellant's premises. The deceased and Ethridge had gone out onto the sidewalk and

appellant followed them and there made the attack which resulted in the death of the deceased. At that time, appellant did not know who had broken the window and no act on the part of the deceased was shown which indicated that he was attempting to destroy any of appellant's property.

All other matters complained of with reference to the Court's charge and the admission of testimony have had our most careful consideration, but we fail to discover any reversible error. The court's charge is adequate and a fair application of the law upon the issues raised by the testimony.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains in his motion on account of our failure, in the original opinion, to write fully relative to his bill of exceptions No. 7, which is based upon the testimony of Mrs. W. R. Boyd, who gave such testimony in an effort, upon the part of the State, to impeach the appellant's witness Mrs. Pearl Mimms. The matter was based upon a conversation claimed to have taken place between the witness Pearl Mimms and Mrs. Boyd shortly after the date of this alleged killing. Mrs. Mimms was recalled by the State and placed upon the stand in an effort to lay a predicate in an attempt to impeach her testimony theretofore given which was favorable to appellant. She was asked, among other things, if she knew Mrs. W. R. Boyd who worked at the Peacock Tavern. To this the witness answered no; that she had never been to such tavern, and had never talked to Mrs. Boyd; had never seen her until Mrs. Boyd walked into the court room that morning; that she never had a conversation with her in witness' life; that she did not make certain statements, inquired about, to Mrs. Boyd; she never went out to this tavern and talked to Mrs. Boyd in her life; never saw Mrs. Boyd, and never talked to her at any time. The State then placed Mrs. Boyd on the stand and asked her many questions relative to the alleged conversation with the witness Pearl Mimms, for all of which questions propounded to the witness Mrs. Boyd we find a predicate laid of the time, place and the person, and in all of such statements

we find the statement alleged to have been made by the witness Pearl Mimms, with the exception of one question. After the alleged statements that were called to Mrs. Mimms' attention by the State's attorney had been gone over with Mrs. Boyd, the further question was propounded to her by the State's attorney.

"Q. She (referring to Pearl Mimms) say anything else? A. Yes, she said 'He had no right to kill that man,' and said 'He run and got his gun and went outside and shot him.' I says 'You better hush talking.' "

The statement just above made is the one complained of on account of the fact that no predicate therefor was laid in the questioning of the witness Pearl Mimms. The first part of this answer by Mrs. Boyd, that is "He had no right to kill that man," we think, had been in substance embodied in the question asked the witness Mimms by the State's attorney, which question and predicate were unobjected to, as follows:

"Q. Didn't you also tell her that if you had told the truth that Bill Spadachene would get his neck broke? A. No.
"Q. Or if you said this: 'If I told what I knew he would get his neck broke?' A. No.
"Q. You didn't tell her that? A. No, sir."

We think that this unobjected to predicate was practically the same as a statement by Mrs. Boyd that "He had no right to kill that man," and is so closely allied, in substance, as to be responsive to the predicate above laid.

The remaining portion of such statement complained of, that is that "He run and got his gun and went outside and shot him," is based upon what the witnesses, one of whom was the appellant, testified to without objection upon the part of appellant. It is true that appellant had a gun; he so testified himself; it is also true that he was outside, although he says the deceased pulled him outside, and he also says that he shot the deceased while outside the house. The only thing left in such statement that might have been objectionable is the phrase *"he run* and got his gun." Unquestionably he got his gun, because he shot the deceased with it. As to when he got this gun, appellant said he was just starting to go home at the time of the trouble, and he gathered up the cash, and put on his coat, and got his gun; that he always carried his gun home with him at night. We are not impressed with the thought that the witness having made this one statement relative to the manner of how the appellant obtained this gun without a

specific predicate being laid for the impeachment of Pearl Mimms on that subject should be sufficient to say that such was a serious error. If error at all, we are of the opinion that such was harmless. Practically the same facts went into the record without objection.

We think that bill of exception No. 1 was properly disposed of in our original opinion, and we pretermit any further discussion thereof.

Bill of exceptions No. 4, in a portion thereof, contains the testimony of John Jenkins in a question and answer form, and seems to concern itself with the fact that the witness Jenkins was a purported eye witness, and was only used in rebuttal by the State, and that the questions asked him, as shown in said bill, were leading and suggestive. This bill is qualified by the learned trial judge, and in this qualification he also certifies that in order to properly present the matters contained therein it was necessary to set out the matter in question and answer form. This qualification was excepted to by the defendant, and therefore leaves him with a bill in question and answer form, with no certificate of the necessity therefor. However we fail to see any error reflected in said bill. It was in rebuttal of appellant's testimony, and although it called the witness' attention to the scene of the difficulty, and pointedly asked him if he saw certain acts upon the part of the deceased that had been testified to by appellant and his witnesses, these questions do not seem to have been leading nor suggestive, and we see no error therein.

Appellant urges upon us further consideration of his bill of exceptions No. 10, and takes us to task on account of the statement made in our original opinion herein wherein we said: "The deceased and Ethridge had gone out onto the sidewalk and appellant followed them and there made the attack which resulted in the death of the deceased," because of the fact that the testimony on this point was sharply controverted, and appellant's witnesses testified that he was pulled out on the sidewalk, and that he made no attack upon the deceased. That such was the testimony offered by appellant, but the State's testimony, which was evidently accepted by the jury, authorized the above complained of statement in the original opinion, and we see no reason for its retraction.

This was a sharply controverted case upon the facts. It became the jury's province to say which theory, if either, was correct. They solved the difficulty by adopting the State's theory, as presented by the witnesses, and we will not disturb their judgment in the matter.

Appellant has filed a supplemental brief herein complaining because of the fact that the trial court, in his charge to the jury, failed to limit the testimony of the witnesses Roy Nunn, Arthur Williams, Henry Kontz, Jess Connaly, K. T. Tillis, Horace Reed and Lee Norwood, wherein all of said witnesses testified that appellant's reputation for being a peaceful and law-abiding citizen, in the community wherein he resided, was bad. This testimony became material because of the fact that appellant had filed a plea for a suspended sentence in the event of a conviction herein. We have carefully read the approximately five pages of exceptions and objections to the court's charge found in the transcript, and find no mention of any such objection therein. In fact it is to be noted that no objection appeared to the court's failure to limit such testimony of the above named witnesses, until the filing of the amended motion for a new trial, eleven days after the trial had been concluded. The main purpose of requiring the filing of objections to the court's charge is in order that the matter might be called to the attention of the trial court and the court might have the chance and privilege of correcting the same, if found to be incorrect. To allow this late filing to take the place of the objection that should have been made during the trial, would serve to abrogate the rule, and leave the court without any chance to correct such charge where an incorrect proceeding was shown therein. We are further of the opinion that a failure to thus limit this impeaching testimony was not fundamental error, nor such error as that unobjected to, as in this instance, could operate to cause a reversal herein.

We see no reason for receding from the position taken in our original opinion herein, and with these further explanatory remarks this motion for a rehearing is overruled.