## BILLY JOHNSON V. THE STATE.

No. 21373. Delivered January 15, 1941.

Rehearing Denied February 19, 1941.

176

The opinion states the case.

*Robert P. Brown* and *Charles Gibbs,* both of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is driving an automobile on the streets of the City of San Angelo while drunk. The punishment assessed is confinement in the State penitentiary for a term of one year and one day.

The State's testimony, briefly stated, shows that on the night of February 6, 1940, while appellant was driving her automobile upon and along the streets of the City of San Angelo, she ran into another car. As a result of the collision, her automobile, as well as the other car, was rather badly damaged, and she was bruised about her head and body. She was immediately taken to a hospital in an ambulance for treatment. The

doctors who administered to her testified that they smelled the odor of liquor on her breath. From their conversations with her and the odor of liquor upon her breath, they concluded that she was drunk. A city policeman who went to the hospital and assisted in carrying her from the emergency room to the X-ray room, testified that from the manner of her speech, talk and having smelled the odor of beer upon her breath, it was his opinion that she was drunk.

Appellant took the witness-stand and denied that she was drunk. She said that she drank only two bottles of beer that evening.

George Phillips testified that he was at appellant's home about 9:00 or 9:30 o'clock on the night in question with a view of selling her some rock-wool insulation for her home; that she did not show any sign of being intoxicated; that he had seen many drunk people; that he talked to them and observed them, but during his visit to the appellant's home, he noticed nothing which indicated that she was intoxicated.

Bill of Exception No. 1 complains of the following testimony elicited by the State from Mr. Green, a city policeman, to-wit:

"I was close enough to her to smell her breath, I could smell beer on her breath. I observed her talk and manner of speech and she talked like any drunk person to me."

Appellant objected to the testimony quoted because it was but the expression of an opinion and conclusion without stating any facts as a basis for the conclusion and therefore prejudicial. It occurs to us that there is no merit in her contention. In this connection, we quote from the syllabus in the case of Inness v. State, 106 Tex. Cr. R. 524, as follows:

" 'A non-expert witness may testify that the accused or some other person was intoxicated on a given date.' Drunkenness is of such common occurrence that its recognition requires no scientific knowledge, and it is a well settled general rule that a witness, not an expert, may give his opinion as to whether or not a person is intoxicated, when he has had the opportunity to observe the facts upon which he bases his opinion, and such testimony is not circumstantial, but is direct."

See collation of authorities in opinion on motion for rehearing. See also Riddle v. State, 107 Texas Cr. R. 571, and cases cited.

By Bill of Exception No. 2 appellant complains of the following testimony elicited by the State from Dr. Stanley:

"I could smell alcohol on her breath; it smelled as if she had been drinking some liquor but I couldn't tell you the type."

It is our opinion that this testimony was admissible. The doctor, no doubt, was familiar with the odor of alcohol and recognized it when he smelled it. Although he was unable to determine or remember its kind or type, the character of the intoxicating liquor which she had imbibed was of little, if any, moment. The main and principal question before the court and jury was whether or not the appellant was drunk.

Bill of Exception No. 3 reflects the following occurrence: After Gordon Kenley, an insurance adjuster, had testified on direct examination as to appellant's general bad reputation, he testified on cross-examination by appellant, as follows:

"I have talked to several insurance adjusters here about her reputation. I have talked to Mr. Horton, to Mr. Pate, and with Mr. Foster. We talked about the claims. * * * I have paid some claims on her. * * * I was not mad about it. I am not mad at her. * * * Because we have had to pay some claims is not the reason I dislike her."

On re-direct examination by the State the witness testified:

"We paid one liability claim at Odessa and we paid on another on Oakes Street here in San Angelo three or four years ago. Those are the only two we have paid off."

Appellant objected to the testimony elicited from the witness on re-direct examination by the State on the ground that it was prejudicial and solved no issue in the case. Whether it was prejudicial or not need not be discussed here. Appellant first brought out the fact that the witness, on behalf of the Insurance Company, had paid some claims on her; consequently she will not be heard to complain of similar testimony developed by the State. She first invaded that field, and explored it, found what she deemed pertinent, and then when the State merely showed the exact number of claims against her, that were paid, she complains. We are constrained to overrule her contention.

By Bill of Exception No. 4 appellant complains of the following remarks made by the District Attorney during his closing argument to the jury:

"Counsel for defendant has gone out of the record to tell you

that if you give this defendant a fine and jail sentence; the Court would be required in that event to suspend her right to drive an automobile for a period of six months; and since he has gone out of the record to tell you that, I will tell you that if you should suspend the sentence, if she is found guilty, under the law she would not lose her right to drive."

Appellant's objection to the argument was based on the ground that it was inflammatory and prejudicial and that it was an unsworn statement outside of the record and not a proper comment on the evidence in the case. It is obvious from the argument complained of that defendant's counsel had invited the argument of which he complains.

In the case of Campbell v. State, 62 Texas Cr. R. 561, this court said:

"When defendant's counsel discussed matters outside of the record, they can not be heard to complain when the court permits opposing counsel to reply. All of this was improper in the absence of any testimony before the jury as to Mrs. Campbell's condition, but the defendant having first referred to these extrinsic matters, he ought not now be permitted to complain when the objectionable remarks were in direct response to his criticisms."

See Fluewellian v. State, 59 Texas Cr. R. 334; Roberts v. State, 60 Texas Cr. R. 111; Hilcher v. State, 60 Texas Cr. R. 180; Branch's Ann. Texas P. C., Sec. 363.

By Bill of Exception No. 5, appellant complains of the following remarks made by the District Attorney in his closing argument to the jury:

"I don't know how you feel about these drunken driving cases, but I will say that if you don't do something about these cases, it may be your wife and your children the next time that will be run over and knocked one-third or one-half a block down the street."

Appellant objected to this argument upon the same grounds stated in Bill No. 4. It occurs to us that this argument was justified by the evidence. There was testimony that the appellant was drunk at the time in question; and it is equally true that the Legislature intended that something had to be done about "these drunken driving cases," and therefore passed the law under which this prosecution was initiated. The object and purpose of the law is to prevent men, women and children from

being wounded and maimed by persons driving automobiles while in a state of intoxication. Consequently we are of the opinion that the argument was not entirely outside the record or an unreasonable deduction from the testimony.

By Bill of Exception No. 6 appellant complains of the following remarks by the District Attorney in his argument to the jury:

"Counsel has told you, without having any evidence in the record to support it, that the State should have had the driver of the car that was hit here to testify as to whether or not the defendant was drunk. He testified to you in his argument that the driver was in a position to know her condition. Since he has gone out of the record to tell you that, I will tell you that the driver of the car that was hit didn't observe the condition of the defendant. He was not able to. The evidence shows this car was knocked for a distance of one-third or one-half block from where it was hit."

Appellant again objected to the argument on the ground that it was inflammatory and prejudicial, being an unsworn statement and outside the record, and not a proper comment upon the evidence adduced upon the trial. The argument here complained of clearly shows that it was invited by defendant's counsel. He was bitterly complaining of the fact that the State had failed to produce the witness whose car was hit by that of the appellant and to have him testify as to whether or not the defendant was drunk. There was no testimony in the record that the driver of the car which was hit, either before, at the time of, or soon after the collision, was close enough to the appellant or in a position to observe her, in order to know whether or not she was drunk. That the car into which the appellant drove her automobile was knocked a distance of approximately one-third of a block is shown by the testimony in the case. What we have said in disposing of Bill of Exception No. 4 applies here and we do not believe that it would serve any useful purpose to here reiterate what we have heretofore said.

By Bill of Exception No. 7 appellant complains of the action of the trial court in overruling his amended motion for a new trial based upon various grounds, namely, the admission of testimony, the arguments of the District Attorney, all of which have been brought forward by proper bills of exception, and on the further ground of misconduct of the jury in this: that after having retired to consider their verdict, they received other unsworn testimony from one or more of their members which

was irrelevant, immaterial, inflammatory and prejudicial to the rights of the defendant in that said jurors, in substance, made the following statements:

"That the defendant was an immoral woman and ought to be sent to the penitentiary."

"The defendant is a mere nobody. She doesn't amount to anything and should be sent to the penitentiary."

"The defendant has been taking high school girls out to her house where she lives for immoral purposes."

The court heard the testimony of the jurors relative to the allegations contained in the motion, but none of them testified that any member had stated during their deliberations that the appellant was an immoral woman or that she had taken high-school girls out to her home for immoral purposes; that the only remark made was that of two of the jurors to the effect that appellant was not "a good woman." When asked what was meant by the statement that she was not "a good woman," the juror answered:

"A good woman usually stays home and attends to her own business, takes care of the family and household and all that sort of thing and don't go places she don't have to go, and don't drive a car while drunk, and one thing and another."

The other jurors who were called to testify stated that they did not hear any such remarks.

After hearing the testimony, the court overruled the motion to which appellant then and there excepted and brings forward for review the rulings of the court relative thereto. We are not prepared to say that under the facts disclosed by this record the remark of the juror that the appellant was not "a good woman" is not a proper deduction from the facts and entirely unjustified. It occurs to us that the juror's interpretation of what is meant by "a good woman" is in accord with the general prevailing opinion of many sober-minded people that good women do not get drunk and recklessly drive automobiles upon the streets of a city while in such condition. Good women, like good men, respect and observe the law and do not wilfully and with impunity disregard it. Moreover, there was testimony that the appellant's general reputation was bad. Whenever such testimony is adduced before the jury, they are authorized to discuss it. See Brice v. State, 61 S. W. 121.

No reversible error having been discovered from a review of

the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In connection with her motion for rehearing appellant presents an affidavit of one of her attorneys to the effect that in preparing bill of exception No. 7, relative to alleged misconduct of the jury, the testimony of Juror Ray was omitted through inadvertence and oversight. Appellant requests that the bill of exception be supplemented or amended by referring to a transcript of the testimony of the jurors which appears to have been filed in this court January 27, 1941, which was twelve days after the original opinion was delivered herein. Such transcript of testimony does not appear to have ever been filed in the trial court. Notice of appeal was given in the trial court June 17, 1940. Appellant had ninety days from that date to file in the trial court the testimony adduced upon the motion for new trial. It is manifest that we are not warranted in considering such transcript for any purpose. As the term implies, the transcript is in question and answer form. No certificate of the trial judge is appended showing the necessity for such form. Hence if it had been timely filed in the court below, we would not be authorized to consider it upon the appeal. See Bierworth v. State, 124 S. W. (2d) 1004.

It might be added that bill of exception No. 7 cannot be amended or supplemented at this time, the same rule being applicable to bills of exception as has been given application to an attempt to amend or supplement the statement of facts after the record has been filed in this court. We quote from McBride v. State, 246 S. W. 394, as follows:

"The original opinion will disclose that this case was reversed because the statement of facts failed to contain the alleged forged check. The state now files a motion for rehearing, submitting in connection therewith the certificate of the trial judge and the affidavits of the district attorney and the court reporter to the effect that the check with the indorsements thereon was in truth and in fact introduced in evidence.

"The effect of the motion is a request that this court permit

the amendment of the statement of facts originally sent to this court. We do not doubt the correctness of the certificate of the trial judge, nor of the affidavits in connection therewith relative to the check actually having been introduced in evidence. Notwithstanding this, we are not permitted to consider them. McConnell v. State, 85 Texas Cr. R. 409, 212 S. W. 498, is a case directly in point, where the State was attempting to supplement the statement of facts upon the very issue involved in the instant case, but was denied that right. In Gherke v. State, 59 Texas Cr. R. 508, 128 S. W. 380, the matter was presented from the other angle. In that case the alleged forged check had been omitted from the record, and for some reason appellant was seeking to supply the same. We quote the following from that opinion:

" 'After the statement of facts has been approved and the record made up we know of no rule of practice that will authorize parties to the case to add anything to the statement of facts. Here the appellant complains that the check was introduced in evidence but he omitted to have it copied in the statement of facts and he now asks that this omission be supplied by allowing the statement of facts to be amended so that said check may be incorporated. This cannot be done. If the rule insisted upon in this case should obtain and this court would hold that this omission could be supplied, we would find ourselves confronted with the proposition that statements of facts could be amended after the record reached this court.' "

See, also, Weeks v. State, 113 S. W. (2d) 532; Rountree v. State, 78 S. W. (2d) 629; Ex parte Kennedy, 72 S. W. (2d) 915; Davidson v. State, 4 S. W. (2d) 74; Hurd v. State, 269 S. W. 439; and Brande v. State, 45 S. W. 17.

Appellant points out in her motion for rehearing that we did not set out in our original opinion all of the testimony of Juror Clark. It is true that we did not undertake to set out such testimony in detail. However, it has been observed, as shown in the original opinion, some of the jurors stated that the appellant was not a good woman. The juror understood these statements to mean, among other things, that she was not a good woman because she had driven an automobile while intoxicated. When we look to bill of exception No. 7, relating to the alleged misconduct of the jury, we find that Juror Clark testified that he heard no one say in "exact words" that appellant was an immoral woman. He said: "I will not say they were not said, but it was in a manner that way, but they did

say she ought to be sent to the penitentiary, that she wasn't a good woman." Upon being questioned by counsel for appellant as to whether the juror undersood from the statements he heard that appellant was a "kept woman" he replied, "I don't recall any of them using exactly that word. * * * They said if we could· send her to the penitentiary we could get her off the street." Again, the juror was asked by appellant's counsel if there was anything said that led him to believe that appellant was a "kept woman." He replied, "Well, there was so much going on in there I can't get the whole drift of everything * * * Frankly, I don't remember." Again, he testified that he got the impression from what he heard that appellant was an immoral woman. He testified, further, that he would not swear that he gained such impression from any remarks made by the jurors during the discussion of the case. He did not remember, according to his version, the name of any person referring to the appellant as a woman of the type mentioned. Appellant's counsel propounded this question to the juror: "It was from what was said by the jury or some member of the jury that made you arrive at that conclusion?" The juror answered, "Yes, or it might have been my own conclusion." Two jurors testified that they heard no statement by any member of the jury. to the effect that appellant was an immoral woman. The remainder of the jurors were in attendance upon the court at the request of the appellant but were not introduced upon the hearing of the motion.

We think it is apparent from the testimony of Juror Clark that he did not place himself in the attitude of testifying positively that any juror referred to appellant as an immoral woman. On the contrary, the testimony in its entirety warranted the conclusion that no such statement was made. It follows from what we have said that we are of opinion the trial judge was warranted in finding that the misconduct complained of in the motion for new trial did not occur. The granting of a new trial for misconduct of the jury is largely in the discretion of the trial court, whose action in refusing a new trial will not be disturbed in the absence of an abuse of such discretion. Johnson v. State, 40 S. W. (2d) 111. The opinion is expressed that an abuse of discretion is not shown.

We think we made proper dispostion in the original opinion or bill of exception No. 4.

As to bill of exception No. 5, which relates to the argument of the district attorney, and which was discussed in the original

opinion, we find that the trial court did not certify that the argument was made; but, on the contrary, he qualifies the bill of exception with the statement that he had "no recollection whatever" of the district attorney having made the argument as set out in the bill. In Clayton v. State, 298 S. W. 601, this court said: "In qualifying this bill, the court states that he is unable to recall any such argument made by the district attorney relative to the grand jury, and that the district attorney denied having made any such statement." The court held in Clayton's Case that the bill, as qualified, was equivalent to no bill at all in that the trial court failed to certify that the argument complained of was actually made. In 4 Texas Jurisprudence, 389, it is said: "A bill of exceptions complaining of the argument or remarks of the attorney for the state must, of itself, manifest the error complained of. Accordingly, it must set out as a fact that the language complained of was used. * * *"

Appellant filed her application for a suspended sentence. She contends that, notwithstanding she failed to except to the charge of the court and brought no bill of exception forward complaining of any omission from the charge, that she was entitled to have the term "good behavior" defined. If it should be conceded that it would have been proper to have given the charge—and this is not conceded—this court is in no position to review the question. Article 658, C. C. P., provides, in part, that before the charge is read to the jury objections thereto shall be made in writing and that the grounds of objection shall be distinctly specified. Article 666, C. C. P., reads, in part, as follows: "All objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial."

We have carefully considered all questions presented in the motion for rehearing and are of opinion that reversible error is not presented.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.