# MAY 19, 1943

## GEORGE FISHER V. THE STATE.

No. 22391. Delivered March 17, 1943.
Rehearing Denied May 5, 1943.
Leave to File Second Motion for Rehearing Denied (Without
Written Opinion) May 19, 1943.

The opinion states the case.

*Dave Watson* and *Schlesinger, Schlesinger & Goodstein,* all of San Antonio, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for murder; the punishment assessed being confinement in the penitentiary for life.

The name of deceased was Theo Morrisson. All parties are negroes.

The State's evidence developed the following facts. While Fannie Brown, George Ellis King and appellant were sitting at a table in the Blue Goose Grill, the deceased, accompanied by some friends, came into the grill and each ordered a bottle of beer. The deceased, with the bottle of beer in his hand, walked over to where appellant and his companions were sitting and asked King for a nickel to put into the Victrola. King replied that he did not have any nickel. The deceased then asked appellant for a nickel, to which appellant replied that he was not going to give him a nickel, following the statement with vile and insulting language toward deceased, who then went back to the counter and continued to drink his beer. Appellant arose from his seat, walked up to the counter, laid five nickels thereon and said to the deceased, "Here is your quarter," to which deceased replied, "I won't take it." Appellant then drew his pistol, but before he fired King took hold of him for the purpose of taking him out of the grill, but appellant released himself and immediately began to shoot Morrisson. After deceased had fallen and while he lay on the floor appellant said to him, "I put you there, you mother f----r, now stay there." Appellant then left. Morrisson was immediately taken to a hospital, but was dead when he arrived.

Appellant's evidence is to the effect that sometime prior to the homicide he played a game of pool with Martin Conner; that Morrisson bet a quarter that Fisher would beat Conner; that Fisher lost the game; that a few days later Herman Wesley told Fisher that Morrisson accused Fisher of having swindled him out of a quarter by "throwing the game" and that he was going to get the quarter or have hell; that when Wesley informed Fisher of this threat he believed that Morrisson would kill him over the quarter; that on the night in question after Morrisson had asked him for a nickel and after Fisher had laid a quarter on the counter, Morrisson said to him, "You can't give me any quarter," and advanced upon him with the beer bottle in his left hand and the other hand in his pocket as if he were going to draw a gun to kill or inflict serious bodily injury upon him, whereupon he shot Morrisson in self-defense.

The only complaints brought forward are found in objections to the court's instructions in applying the law to the issue of self-defense generally, and as based on communicated threats.

The clearest way to deal with the questions presented is to copy the charges complained of and the objections thereto.

"If from the evidence you believe the defendant George Fisher, assaulted the said Theo Morrisson, but further believe or have a reasonable doubt thereof, that at the time of so doing the said Theo Morrisson had made, was making or was preparing to make an attack on defendant with a pistol or other dangerous weapon, *or it reasonably so appeared to the defendant as viewed from his standpoint alone at the time which,* from the words spoken or acts done by the said Theo Morrisson, or from the manner and character of such attack, and the defendant's knowledge of the character and disposition of the said Theo Morrisson, caused him, the George Fisher to have a reasonable expectation or fear of death or serious bodily injury, *or it reasonably so appeared to the defendant viewed from his, the defendant's standpoint alone at the time,* and that acting under such reasonable expectation or fear, the defendant shot the said Theo Morrisson then you should acquit the defendant, and if the said Theo Morrisson was armed with a pistol or other dangerous weapon, at the time he was shot and had made, was making or was preparing to make such attack on the defendant, or it reasonably so appeared to the defendant viewed from his standpoint at the time, then the law presumes he, the said Theo Morrisson intended to murder or to inflict serious bodily injury upon the defendant.

"When a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to produce evidence of the threats made, but the same shall not be regarded as affording justification for the offense, unless it be shown that at the time of the homicide the person killed by some act then done, manifested an intention to execute the threat made.

"If you believe from the evidence that deceased, Theo Morrisson, had threatened to take the life of defendant or had threatened to do him some serious bodily injury, *or the defendant had been so informed,* and you further believe from the evidence, or have a reasonable doubt thereof, that at the time of the homicide, deceased, Tho Morrison, did some act, or spoke some words, or both, which caused the defendant reasonably to believe or apprehend that his life was in danger, or his person was in danger of serious bodily injury, *viewed from the defendant's standpoint alone, at the time of the shooting,* under such circumstances defendant would have the right to shoot and kill de-

ceased, and would be guilty of no offense, and your verdict should be 'not guilty'."

We have italicized certain portions of the quoted charges, which become pertinent in view of the objections thereto, which follow.

"Comes now the defendant in the above numbered and entitled cause and excepts to the charge of the Court as follows, to-wit, as shown on page 5 of said charge:

"Because the same presents the defendant's right of self-defense as follows: 'In this connection with the foregoing charge on self-defense you are charged if you believe from the evidence, or have a reasonable doubt thereof, that the defendant was in danger of suffering death or serious bodily injury at the hands of Theo Morrisson, which if taken alone authorized the jury to pass upon the issue of the defendant's right of self-defense from what the jury believes to be the facts and not as the appearance of danger as viewed by the defendant at the time from his standpoint, and the same should be eliminated, and only the remaining portion of the paragraph submitted in said charge to the jury.'

"Defendant further excepts to paragraph 12, on page 4, because the charge of the Court thereon is more onerous than required by law and presents the same from the standpoint of what the jury may believe instead of from the standpoint of the defendant and what he reasonably believed at the time, and because the charge is too restrictive in that it requires that the jury believe from the evidence that the defendant had been threatened by the deceased when the law is if he had been reliably informed of such threats and believed them to be true, whether true or not, he would have the right to defend himself, and would have the further right if believing such information to arm himself prepared to resent or defend against any unlawful assault or threatened assault made or about to be made upon him, and because the same submits the right of self-defense from the standpoint of the jury and not from the standpoint of the defendant at the time, and because the court fails to affirmatively instruct the jury under the circumstances shown by the evidence of threats having been made against him, and inform the jury *the jury* that the defendant would have a legal right to be prepared at all times to defend against such illegal assault.

"Defendant further excepts because the court fails to submit the issue as shown by the evidence of the right of self-defense

as viewed by the defendant at the time under all the circumstances in evidence.

"Defendant represents to the court that each of said errors are material errors and highly prejudicial to the defendant and denies him the right of self-defense as shown by the evidence and under the law of this State.

"The defendant further excepts to said charge after the same has been corrected by the Court and particularly on page 6 of said charge because the same requires that the jury believe that deceased Theo Morrisson had threatened to take the life of the defendant or threatened to do him some serious bodily injury when the evidence shows that the threat reported to the defendant was told to another party who transferred the information of the threat to the defendant, and the defendant testified that he believed the information so given to him and under such circumstances the defendant would have the right so believing that such threats were made, to act upon such threats the same as if they were true and because said entire charge fails to submit defendant's right of self-defense based upon threats from the standpoint of the defendant and what he reasonably believed at the time and his right based upon information of previous threats in connection with the demonstration at the time.

"Because said charge presents self-defense from the standpoint of the jury and how they believe danger appeared to the defendant instead of from the standpoint of the defendant and viewed from his standpoint at the time under all the facts and circumstances known to him."

It is apparent that the trial court made some corrections in his charge after the objections were first presented to him. We are not informed as to how the instructions read prior to their amendment, but it occurs to us that the italicized portions of the instructions answer the objections urged against them. As we understand the defensive charges they redound to appellant's benefit if the jury believed the claimed defensive matters were present, or if it reasonably so appeared to appellant as viewed from his standpoint at the time of the killing. The right to act was not limited by the jury's viewpoint. This seems to be the burden of appellant's objections to the charge. We fail to see how the jury could have been confused about appellant's rights.

We are not to be understood as approving the form of the charges. They might have been so framed as to avoid the objections urged. As to the charge based upon threats, we have said more than once that it is better to more clearly follow the statute (Art. 1258 P. C. 1925) and inform the jury that if at the time of the homicide deceased did some act which appeared to appellant as viewed from his standpoint at the time to manifest an intention on the part of deceased to execute the threat, appellant would be justified in the killing. It will be observed, however, that there was no specific objection to the charge upon this point as is required under the provision of Art. 658 C. C. P., 1925. The charge in the present case is much like that found in Tilmeyer v. State, 62 Tex. Cr. R. 272, 136 S. W. 1060.

The objection that the court should have told the jury that if appellant had been informed of the threat and believed it to be true, whether true or not, he would have the right to act thereon might have presented a somewhat serious question if there had been any issue as to whether the threat was in fact made. That issue, however, was not controverted. See Hudson v. State, 59 Tex. Cr. R. 650, 129 S. W. 1125; Buckner v. State, 55 Tex. Cr. R. 511, 117 S. W. 805.

As to the suggestion that the jury should have been informed that in view of the threat communicated to appellant he would have the right to arm himself to defend against a contemplated attack, we observe that in no way was appellant's right of self-defense abridged or limited, hence no necessity arose for a charge upon the right to arm. See Branch's Ann. Tex. P. C. p. 1091, Sec. 1950 and cases cited; Briscoe v. State, 90 Tex. Cr. R. 650, 236 S. W. 991; Allen v. State, 122 Tex. Cr. R. 159, 54 S. W. (2d) 519.

We are cited by appellant to Lundy v. State, 59 Tex. Cr. R. 131, 127 S. W. 1032 as supporting his contention. That case was reversed because the trial court failed to charge on self-defense except in connection with threats, the holding being that under the facts the accused there was entitled to an instruction on self-defense generally independent of threats. Here the trial court charged it both ways.

A number of other cases are cited by appellant, all of which have been examined. This opinion would be unnecessarily lengthened if it should be undertaken to review each of such cases. The facts are so variant, and the instructions in each, when analyzed, present phases not present here.

The State's witnesses testified that deceased made no movement or demonstration which appellant could have viewed with alarm. Appellant and one Jackson testified to the defensive matters about deceased advancing on appellant with a beer bottle in one hand and the other in his pocket as though to draw a weapon. Two or three of the witnesses present testified positively that Jackson was not there at all and the others that they never saw him if he was present at the time of the killing. In view of the evidence the verdict of the jury is not surprising, and we find nothing in the record which in our judgment would warrant a reversal.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant evidently misconstrues the statement made in our original opinion wherein it is stated that the issue of a threat being made was not controverted. In contravention of such statement appellant offers the testimony of George Ellis King who testified that he did not hear the deceased make any threats of any kind against appellant during their encounter in the place where the killing took place. Again he says in appellant's written statement herein introduced (although denied by appellant on the witness stand), it was shown that appellant said: "Morrisson had never threatened to hurt me or to take my life, and I had never threatened to hurt him or take his life before the night of April 23, 1942."

We do not think such statements were necessarily an effort to show that the witness Wesley, who testified to what might be termed a threat, testified falsely. It was doubtless in contemplation of the parties so testifying that such threats were not made to them or in their presence, the appellant evidently referring to the fact that the deceased had not made any such statement to him. That which is termed a threat by appellant is found in the record as communicated to appellant from the witness Wesley, a portion of whose testimony is as follows:

"* * * Then I told him that Theo (the deceased) said 'he the (appellant) had double crossed him out of a quarter in a pool game,' and he said, 'Yes.' I said, 'Do you owe him a quarter,' and he said, 'No.' He said 'No. I lost thirty cents and he lost a quarter,' and I said, 'If you don't give him a quarter he is going to have hell.' That is all I know. * * * He just said he was going to have hell with him, and that is all he said."

If this could be called a threat, there was no controversy made over the fact that such was said to the witness Wesley, nor communicated to appellant by Wesley. Evidently the appellant's written statement referred to an actual contact between himself and the deceased in which no threat had been made either to the other, and we therefore think the original opinion is correct in the statement that the making of the so-called threat to Wesley, the only one in evidence, was not controverted.

The matters relative to the court's charge and the exceptions levelled thereat were given careful consideration by us in the original opinion, and no benefit can be had in a repetition of that portion of the opinion. We think the same were properly disposed of therein.

The motion for a rehearing will therefore be overruled.