D. J. MILUM V. THE STATE.

No. 23359. Delivered May 22, 1946.
Rehearing Denied June 19, 1946.

The opinion states the case.

*Percy Foreman,* of Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, and *E. T. Branch,* Assistant Criminal District Attorney, both of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is negligent homicide. The punishment assessed is confinement in the county jail for a period of twelve months.

The uncontroverted evidence shows that about noon on the 6th day of April, 1945, a coupe driven by appellant collided with a taxicab driven by Oscar Hill which, at the time, was occupied by three women, including Hill's wife. The collision occurred on Pruitt Street. As a result of the collision the taxi-cab turned over and the occupants thereof were severely injured, from the effects of which injuries Mrs. Oscar Hill died.

The only issue in conflict relates to the speed at which appellant was driving and whether or not the stop sign was up or lying in the ditch beside the street. The State's evidence shows that appellant was driving at the rate of about 60 miles per hour, and that the stop sign was standing erect on the side of the street where Park Street intersected Pruitt Street, while appellant testified that he was driving at the rate of from 20. to 30 miles per hour; that he slowed down to 20 miles when he approached Pruitt Street; that the stop sign at the intersection of the street was not up but was lying in the ditch.

It will be noted that an issue of fact was raised which the jury decided adversely to him, and this court would not be authorized in holding that their conclusion was not justified by the evidence.

Appellant's first contention is that the verdict of the jury is void because they found him guilty of negligent homicide in the second degree, as alleged in the second count of the complaint and information, which count he claims was not submitted to the jury. We are not in accord with his contention. It is true that the court, in the preliminary statement in his charge, used this language:

"The defendant, D. J. Milum, stands charged by information with the offense of negligent homicide of the first degree, etc."

Appellant urged no objection to the court's charge. The first time that he raised the question was in his motion for a new trial. Article 658, C. C. P., requires that the accused make his objections to the court's charge before the same is submitted to the jury. Having failed to comply with the statute in that respect, he cannot afterwards complain thereof. However, the court in submitting the case to the jury, submitted it on both counts, which authorized the jury to find the defendant guilty upon either count. Had the court intended to submit the case to the jury upon the first count alone, then he would not have also submitted it to the jury on the second count. Appellant cites us to 23 Tex. Jur., p. 665, sec. 53, as supporting his contention. We agree with him that the rule there stated is the correct rule and has been followed by this court in many cases, but the rule has no application to the instant case upon the facts and circumstances disclosed by the record. Construing the charge as a whole, as we must do, we have reached the conclusion that the preliminary statement in the court's charge, not being an

indispensable part thereof, does not control the essential parts thereof.

By Bills of Exception Nos. 1, 2, 3 and 4, he complains of the action of the court in permitting the State to prove that there was a stop sign at the intersection of Park and Pruitt Streets. He objected to this testimony on the ground that there was no allegation in the complaint and information that he ran through a stop sign. While it may be true that it was not averred that he ran through a stop sign, yet, the evidence was material upon the issue of speed and reckless driving, which showed a disregard of the law of the road.

All other matters complained of are deemed to be without merit and are overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains in his motion on account of what he terms a failure to prove the corpus delicti in that it is not shown that Mrs. Hill died as a result of the injuries received by her in the accident when he struck Mr. Hill's automobile.

We quote from the record relative thereto. Dr. Holcomback testified:

"I was personally acquainted with Mrs. Oscar Hill and she was a patient of mine. On or about April 6, this year, I had occasion to see Mrs. Oscar Hill when she was brought into the Goose Creek Hospital. I examined her and found she had been injured. She was suffering from a fractured skull and a bad cerebral condition. She died on April 9th, at 11:00 A. M. Her death was due to the fractured skull and cerebral condition. I presume that the condition I found could have been caused by an automobile striking the the automobile in which she was riding. * * * Mrs. Hill died of a fractured skull and cerebral concussion. Concussion is caused from an outside blow."

Oscar Hill, the husband of Mrs. Oscar Hill, after testifying about the accident and the collision, said:

"As a result of this collision, my wife was injured. I was injured, and so was Mrs. L. M. Hill and Mrs. Billie Jean Smith. I had my pelvis bone broken on each side, and my back in four places. I just know that (they) took my sister-in-law, Mrs. L. M. Hill, to the hospital. All four of us were taken to the hospital. My wife died at the hospital."

Dr. Paul V. Ledbetter testified, among other things, as follows:

"On or about April 8, 1945, I examined Mrs. Oscar Hill in the Goose Creek Hospital. * * * I examined all of the patients; and, among them, I examined Mrs. Oscar Hill. She was suffering as a result of a terrific brain injury. I was advised that she later died. I didn't see her after death. I saw her April 8th, and the only way I know she died is I was told she died. If she died the next day or two, it would have been as a result of the trouble I found by my diagnosis. If she had died that evening, I would not have been surprised. People of that sort, with this sort of injuries usually die within a week or ten days. Her brain was not only concussed, but it was torn and bleeding. * * * I did not think she had a chance to get well. Her injury could have been caused by another automobile striking the automobile in which she was riding. I don't know what caused her injuries; I just saw her at the hospital. If Mrs. Oscar Hill died the next day, or within the next few days, it is my opinion that her death was caused by reason of these injuries."

We think the original opinion was correct when it states:

"As a result of the collision the taxicab turned over and the occupants thereof were severely injured, from the effects of which injuries Mrs. Oscar Hill died."

The motion for rehearing will be overruled.