Francis Paul SEEFURTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 40724.

Court of Criminal Appeals of Texas.

Dec. 6, 1967.

Rehearing Denied Jan. 31, 1968.

George L. Walker, Houston, Marvin O. Teague, Houston, (on appeal only), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and F. M. Stover, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

The offense is Unlawful Delivery of a Dangerous Drug, To wit: Amphetamine; the punishment, assessed by the jury, 730 days in jail and $3,000.00 fine.

At the outset appellant challenges the sufficiency of the evidence to support the conviction.

J. D. Oakes, a member of the Narcotic Division of the Houston Police Department, testified that on February 9, 1966, at approximately 4 p. m. he was in a bar with another person known to him only as Charles (later shown to be Charles Peters); that at such time he had occasion to talk over the telephone with a person he later learned to be the appellant; that in said conversation appellant inquired of Oakes whether he was interested in purchasing 50,000 amphetamine pills for $3,-500.00; that a meeting was agreed upon for 6 p. m. that same date at 5419 South Braeswood, a shopping center in Harris County, Texas; that following such conversation Officer Oakes called the police department and informed Officer Hambrick of the conversation.

Oakes related that while dressed in plain clothes and while driving an unmarked black Pontiac police vehicle he went to the shopping center, arriving there at approximately 6:10 p. m.; that someone else was with him (later shown to be Charles Peters).

Officer Oakes testified that though he did not know appellant by sight the appellant came to the Pontiac and directed him to park alongside of his (the appellant's) car, which he did; that the appellant got in the back seat of the Pontiac and inquired if Oakes had the money to which he gave an affirmative answer; that he did have $750.00 arranged in a "gambler's roll"; that appellant went to his nearby car and brought back two cellophane packages which he handed to Oakes telling him that each package contained 5,000 pills and that the remainder of the pills were in his car; that after the pills were handed to him by the appellant he (Oakes) stepped from the car, dropped the two packages on the ground; that at this time they were surrounded by the other officers and arrested; that he was present when appellant's car was searched; that he could identify State's Exhibits Nos. 1 and 2 as the two packages handed him by the appellant; that at the time of such delivery he did not have an original prescription from a practicing physician for the pills, nor was there affixed to the container in which the pills were delivered a name and address of the establishment from which such drugs were delivered, nor was there a date on the packages, nor was there a number of a prescription filed; that he was present when the pills seized at the time of arrest were turned over to the chemist, Floyd McDonald.

M. W. Hambrick, a member of the Federal Bureau of Narcotics, testified that on February 9, 1966, he was employed by the Houston Police Department, Narcotics Division; that on said date between 4 and 6 p. m. he received a telephone call from Officer Oakes; that as a result thereof he and another officer went to the 5400 block of South Braeswood to a shopping center, arriving a few minutes before Officer Oakes; that when Oakes arrived the appellant appeared and got in the back seat of the Pontiac where he remained for a few minutes; that appellant then got out of the Pontiac and went to the rear of a white Buick station wagon from which he removed two cellophane packages and returned to the Pontiac; that he and the other officers then converged on the Pontiac where they found the packages had been broken and they picked up the pills; that after appellant's arrest the officers searched appellant's nearby station wagon and found 8 cellophane bags containing the same type of capsules as in the packages which had been broken; that all of such capsules were turned over to the City Chemist McDonald; that he did not learn until later that appellant was the owner of the drug store at the shopping center; that he nor anyone else made an examination of the prescription records at the drug store. Hambrick identified State's Exhibits Nos. 1 and 2 as the capsules found in the broken packages, and State's Exhibit No. 3 as the capsules found in appellant's station wagon.

Floyd McDonald, a chemist and toxicologist with the City of Houston, identified

State's Exhibits Nos. 1, 2 and 3 as the items he received from Officer Oakes on February 10, 1966, and testified that from a chemical analysis of such items he concluded that such exhibits contained approximately 48,000 individual capsules of amphetamine.

Testifying in his own behalf, appellant, a registered pharmacist, related that on February 9, 1966, he was operating three drug stores in the Houston area; that since December, 1965, he had on hand a large quantity of amphetamine pills; that in January, 1966, he met Charles Peters in a tavern, who approached him about purchasing a large quantity of amphetamine for a ship's store; that he informed Peters the cost would be $3,500.00; that a week later he saw Peters and explained he would have to have a purchase order before making the sale and that Peters assured him he would have such an order; that he would not have sold without such an order.

Appellant denied any conversation with Oakes, but acknowledged a conversation with Peters in which they arranged a meeting; that when Peters appeared at the shopping center Oakes was with him; that when they asked if he had the pills he went to his car and got two plastic sacks containing approximately 10,000 capsules; that when he displayed the capsules to Oakes and Peters, Oakes told him to put them back and got out of the car just as the officers appeared on the scene; that Peters then grabbed the sacks from him and threw them out the window; that he had not lost possession until Peters grabbed the sacks.

Robert Anders, a defense witness, testified that he was in a lounge when appellant inquired of him if he knew anyone who would be interested in buying a surplus of drugs he had; that someone sitting next to him said he was a buying agent and that he had a purchase order to buy drugs.

The State called in rebuttal Perry Segall, a special investigator, who related that in January, 1966, the appellant told him that he (the appellant) had 50,000 amphetamine pills for sale and if the witness found a buyer he would get $1,000.00; that the appellant gave to him some samples of these capsules which he gave to the Chief of Police of Bellaire, Texas; that on February 9, 1966, the appellant called him and informed him that a buyer for the pills had been secured and requested that the witness be his body guard, promising one fee if the sale was consummated and another if it was not.

Segall testified that he went to Braeswood Shopping Center, and his testimony as to what transpired corroborated Officer Hambrick.

■ We conclude that the evidence is sufficient to support the jury's verdict.

■■ In other grounds of error appellant contends that the trial court erred in admitting into evidence the fruits of an illegal search, To wit: State's Exhibits Nos. 1, 2 and 3. It is observed from the foregoing summary that State's Exhibits Nos. 1 and 2 were picked up from the public parking lot of a shopping center and were not obtained as the result of any search. The officers had probable cause to arrest the appellant at the shopping center when they did. Their subsequent search at the time of the arrest of appellant's nearby station wagon from which he had been seen removing State's Exhibits Nos. 1 and 2 was clearly incident to a lawful arrest. State's Exhibit No. 3 was properly admitted into evidence. Appellant's claims in this regard are without merit.

■ In connection with appellant's next ground of error, we quote from appellant's brief filed in the trial court:

"The argument of State's counsel in this cause was so prejudicial, objectionable, and inflammatory as to cause the jury to have rendered an illegal verdict."

No statement, argument or authorities were presented in support of such ground

of error. In a supplemental brief filed in this Court we are merely referred to the argument.

We do not consider the above as a ground of error because it does not tell the trial court what the appellant is complaining about. See Article 40.09, Sec. 9, Vernon's Ann.C.C.P. Only recently we stated in Ash v. State, Tex.Cr.App., 420 S.W.2d 703, 705 (November 1, 1967): "Candor and specificity is necessary in order to state a ground of error."

■ We cannot agree that the trial court abused its discretion in refusing appellant's request for an "adjournment" in order for appellant to obtain certain records. J. W. Pruitt, a defense witness, testified he was in the wholesale drug business and had sold drugs including amphetamine to the appellant; that the records and invoices in his office, which he did not have with him, would reflect such sales. The court denied appellant's request for a 40 minute or so recess in order to allow the witness time to travel 10 or 12 miles to his office. The record before us does not reflect appellant's diligence in securing such business records, invoices, etc., nor are they brought forward in this appellate record. We further observe that appellant's testimony that he had legitimately acquired the 50,000 capsules of amphetamine was undisputed.

Appellant presents nine grounds of error relating to the court's charge and claims that the court committed error in overruling his objections to the charge and his special requested charges. These grounds of error are presented solely by formal bills of exception. See Article 40.09, Sec. 6(a), V.A.C.C.P. Nowhere else in the record is there any evidence or even any indication that the objections and special requested charges were presented in writing to the court prior to the reading of the charge to the jury in accordance with Articles 36.14 and 36.15, V.A.C.C.P.

In an instrument entitled "Certificate Supplementing Approval of the Record" the trial judge stated that the formal bills of exception were never presented to him, that each is factually untrue because no written objections or requested charges were presented to him in relation to the court's charge.

In his supplemental appellate brief appellant points out "[t]he truth of the matter is that the Trial Court told the Trial Counsel for the Appellant at the time, that he could make his objections to the Court's Charge at a later time. This was done by way of the formal Bills of Exception."

■■ If the trial judge took the action claimed, he was without authority to permit such procedure. Cf. Gonzalez v. State, 164 Tex.Cr.R. 64, 297 S.W.2d 144; Ortiz v. State, 121 Tex.Cr.R. 438, 53 S.W.2d 58. By failing to comply with the requirements of Articles 36.14 and 36.15, supra, at the trial itself appellant waived his right to have his objections and special requested charges considered. Scott v. State, 106 Tex.Cr.R. 376, 292 S.W. 891; Lopez v. State, 112 Tex.Cr.R. 517, 17 S.W.2d 807; Hanvy v. State, 144 Tex.Cr.R. 351, 162 S.W.2d 721; Arrisola v. State, 171 Tex.Cr.R. 369, 350 S.W.2d 551.

■■ These articles are ones the Legislature had a right to enact, and are statutes which the Courts can neither ignore or emasculate. See Vinson v. State, 77 Tex.Cr.R. 546, 179 S.W. 574.

■ These articles are mandatory and there must be strict compliance with their provisions. See Templeton v. State, 152 Tex.Cr.R. 121, 210 S.W.2d 168; Cedillo v. State, 165 Tex.Cr.R. 371, 307 S.W.2d 267; Hays v. State, 129 Tex.Cr.R. 156, 84 S.W.2d 1008.

The strickness of the interpretation to be given to such statutes is demonstrated by our recent decision in Smith v. State, 415 S.W.2d 206, where we held that the requirements of Articles 36.14 and 36.15, su-

pra, would control over the provisions of Article 40.09, Sec. 4, V.A.C.C.P., giving effect to a transcription of the court reporter's notes which are certified and included in the record on appeal.

■ The real purpose of the enactment of these articles was to enable the trial judge to know in what respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury. See Spadachene v. State, 137 Tex.Cr.R. 26, 127 S.W.2d 466; Brown v. State, 140 Tex.Cr. R. 133, 143 S.W.2d 775; Garrison v. State, 143 Tex.Cr.R. 403, 158 S.W.2d 815; Green v. State, 144 Tex.Cr.R. 186, 161 S.W.2d 114.

These articles serve a salutary purpose in preventing the trial judge from being "sand-bagged" and in preventing unnecessary reversals.

■ An objection to an instruction or special requested charge made for the first time after the trial, after verdict, on the motion for new trial or on appeal comes too late under the very terms of the statutes. Mannen v. State, 109 Tex.Cr.R. 74, 3 S.W.2d 443; Walker v. State, 78 Tex.Cr. R. 237, 181 S.W. 191; Dean v. State, 118 Tex.Cr.R. 251, 42 S.W.2d 1025; Choate v. State, 131 Tex.Cr.R. 147, 97 S.W.2d 189; Johnson v. State, 141 Tex.Cr.R. 175, 147 S.W.2d 811; Campbell v. State, 92 Tex. Cr.R. 28, 241 S.W. 149; Milum v. State, 149 Tex.Cr.R. 409, 195 S.W.2d 134; Miller v. State, 82 Tex.Cr.R. 586, 200 S.W. 398; Crawford v. State, 149 Tex.Cr.R. 219, 193 S.W.2d 208; Anderson v. State, 95 Tex. Cr.R. 346, 254 S.W. 986; Fisher v. State, 146 Tex.Cr.R. 16, 170 S.W.2d 773; Dukes v. State, 138 Tex.Cr.R. 503, 136 S.W.2d 848.

■ Likewise, an objection to the court's charge or a special requested charge presented for the first time in a bill of exception cannot be considered. See Kincaid v. State, 111 Tex.Cr.R. 1, 10 S.W.

2d 725; Martin v. State, 131 Tex.Cr.R. 59, 95 S.W.2d 964.

■ It is true that where the record fails to disclose some action, testimony, objection, event, etc., a formal bill of exception may be utilized to supply the deficit. See Article 40.09, Sec. 6(a) (b), supra. Such procedure was not designed, however, to add to the record an event that did not in fact occur.

From what we have said, it is clear that the bills of exception are not before us for review.

The State further contends that the formal bills of exception cannot be considered by this Court because, though filed with the clerk, they were not "presented" to the trial judge as required by Article 40.09, Sec. 6(a) supra. The State also cites and relies upon Articles 36.20, 40.10, V.A.C.C. P. and Rule 372(f), Texas Rules of Civil Procedure.

The appellant concedes the record does not reflect that the bills were formally presented to the trial judge, but calls attention to the timely filing of such bills with the clerk. He contends that since the bills were not all filed at the same time the clerk was caused to give written notice to the court of such filings on three separate occasions; that the trial court did not act upon the bills within 100 days after the giving of notice of appeal and that such bills must be considered as approved; that the trial court approved the record reflecting the above action without objection from the State or without holding a hearing for the approval of the record on his own motion. See Article 40.09, Sec. 7, V.A.C.C.P.

Appellant further complains that the supplemental certificate to the approval of the record entered 213 days after notice of appeal, comes too late and cannot be considered as a qualification to his bills of exception.

Since the bills are not before us for review for the reasons stated above, we need not decide whether under the facts of this particular case the "presentment" requirements of Article 40.09, Sec. 6(a), supra, have been met.

■ Where a formal bill of exception relating to the court's charge is presented, it will always be carefully scrutinized to determine compliance with Articles 36.14 and 36.15, supra. Otherwise, the very purpose of these articles will be subverted.

Even if we were able to conclude that appellant's bills of exception were before this Court for review, we would be unable to conclude that they show a compliance with the above described statutes, or if they do, that they reflect error.

Bills of exception Nos. 2 to 8, inclusive, recite that the appellant presented his objection to the charge in writing and set out the objection, but fail to show that such objection in writing was presented to the trial court or filed with the clerk or that the trial judge made any ruling on such objection. See Sullivan v. State, Tex.Cr. App., 401 S.W.2d 246; Marr v. State, Tex.Cr.App., 383 S.W.2d 928; Stone v. State, 171 Tex.Cr.R. 201, 346 S.W.2d 323; De La Garza v. State, Tex.Cr.App., 379 S. W.2d 904.

Bill of exception No. 9 relates to a requested charge "presented to the court" before the court's charge was read and recites that the court refused to grant it to which action appellant objected and excepted. This bill is deficient in that it does not show that the requested charge was in writing.

Bill of exception No. 1 is the only bill which reflects that written objection to the court's charge was presented to the trial judge and acted on by him prior to the reading of the charge to the jury.

This bill complains that there was no bifurcated trial in this misdemeanor case. See Article 37.07, V.A.C.C.P. (1965).

Only recently in Bridges v. State, 422 S.W. 2d 449, this Court noted the difficulties and necessity of construing the 1965 version of Article 37.07, supra. See Rojas v. State, Tex.Cr.App., 404 S.W.2d 30; Williams v. State, Tex.Cr.App., 415 S.W.2d 917; Jones v. State, Tex.Cr.App., 416 S.W.2d 412; Attorney General's Opinion C–587 (January 25, 1966). These difficulties have apparently been removed by the 1967 amendment of Article 37.07, supra (Acts 1967, 60th Leg., Ch. 659, pp. 1732, 1739, 1740).

■ We would not be inclined to hold that a unitary trial in a misdemeanor case was error under the 1965 version of Article 37.07, supra, in the absence of a showing of injury. See Bridges v. State, supra.

Finding no reversible error, the judgment is affirmed.