**Walter Lee SIROS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38621.**

Court of Criminal Appeals of Texas.

Jan. 26, 1966.

Rehearing Denied March 16, 1966.

See also Tex.Cr., 367 S.W.2d 701.

Luther E. Jones, Jr., Corpus Christi, Percy Foreman, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Daily and Lee P. Ward, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for rape; the punishment, death.

The evidence of the state reveals that while the prosecutrix, twenty years of age and seven months pregnant, and her husband were on the way home after visiting in the home of her cousin, their

automobile ran out of gasoline and they began walking. When near home about 12:30 A.M., the husband having preceded the prosecutrix across the street at an intersection, she was suddenly grabbed by a man from the sidewalk and shoved into an automobile driven by another man. On hearing her scream and call his name, her husband ran toward her as she was being dragged into a car, which sped away before he could reach her or overtake the car. However, he did get within ten feet of the automobile which he said was a 1962 Tempest with a red body and a white canvas top, bearing license number UE 833. He immediately notified the police and went with them to the place where the prosecutrix was abducted, and there recovered her purse and her glove (one). The husband next saw his wife, the prosecutrix, at the police station.

While testifying, the prosecutrix identified the appellant as the man driving the car at the time she was abducted, and when Ronald C. Rust momentarily appeared in the courtroom, she identified him as the man who grabbed her, lifted her from the street, and shoved her into the car. The appellant and Rust shoved her down between the front bucket seats and beat her, pulled her hair, and tore her clothes. When she asked to be released the appellant said, "You are the third one tonight. You are not going to get out of this alive, and you have no chance, so you *lay* there and you shut up, or you are going to die now." On telling them she was seven months pregnant and worried about her baby, she testified that she believed it was the appellant who said, "If you don't shut up, if you don't lie still, if you don't quit talking, I am going to hit you so hard that I am going to mess up your insides so much they are going to be mush, and you are not going to be able to talk; you are not going to be able to live, and that baby is not going to live, either." After travelling several miles and turning onto a dirt road they stopped and walked down a slope in a wooded area where the appellant said he was going to kill her, and they began pulling off her clothes. She removed the rest of her clothing, with the hope they would spare her life, and then they knocked her down on the ground, and the appellant placed his private parts into her private parts without her consent. While he had intercourse with her as she lay nude on the ground, Rust was "using (her) breast" by "biting, pulling and sucking." Then Rust had intercourse with her. They took her back to the car, leaving her panties and girdle at the scene. While Rust was driving, the appellant was getting into position to have intercourse with her again, at which time Rust became sick and appellant began driving. Soon after a tire blew out they stopped the car and shoved her down an embankment into a deep ravine and drove away. Shortly thereafter, she found help at a residence. The officers were notified and arrived about 2:30 A.M., and took her to a hospital.

In response to a police radio dispatch, Officers Kuehn and Sieckmann apprehended the appellant, about 2:30 A.M., as he was driving a 1962 red and white Tempest Pontiac convertible with license number UE 833 and accompanied by Ronald C. Rust. The car had a flat tire which was shredded and appeared to have been driven some distance. Officer Kuehn expressed the opinion that appellant was not intoxicated when apprehended.

Rust accompanied the officers to the scene of the crime where they recovered a pair of women's panties and a girdle which were later identified by the prosecutrix as being hers.

Seminal stains were found on the undershorts worn by appellant at the time he was apprehended. Head hairs on appellant's trousers were found to be identical with the head hair of the prosecutrix, fibers from the coat worn by the prose-

cutrix were like those found on the shirt worn by appellant when apprehended, and the dirt on appellant's shoes and trousers was identical to the dirt at the scene of the crime.

The evidence reflects that immediately after the prosecutrix was released she was crying and hysterical, there were bruises and abrasions on her back, shoulders, side, and knee, her leg was bleeding, and there was a knot on her head. Her lips, cheeks and eyes were swollen, and there were teeth marks on her left breast, and her clothing was bloodstained and muddy.

Testifying in his own behalf, the appellant stated that he was twenty-three years of age, six feet and one and one-half inches in height, and normally weighed 225 pounds; that he had been convicted of felony theft in 1958, and also convicted in 1960 for assault with a prohibited weapon, with punishment assessed at four years in the penitentiary.

The appellant further testified that while Rust was driving his 1962 Pontiac Tempest convertible they stopped and bought a quart of whiskey and arrived shortly after 10 P.M., at a lounge where they sat at a table and drank all the whiskey and also four or five bottles of beer by closing time at 12 o'clock midnight. After leaving the lounge, the appellant drove the car, following the directions of Rust. Appellant testified he was "dizzy and mixed-up and drunk." A girl got in the car and Rust told him to drive on, after which they drove "a long ways." Rust directed him to stop by a bridge which they did, and all got out and went down an embankment. The appellant testified that he never threatened, abused, or had intercourse with the girl; that Rust suggested he return to the car, which he did, and while on the way he heard the girl say, "Don't tear my clothes, I will take them off," and that he never heard anyone cry or scream. In a short time, with Rust driving, they left. Appellant was feeling better but Rust soon became sick, and appellant began driving. They then had a flat tire but kept driving because they had no jack. After some distance they stopped and the girl got out and followed Rust. Appellant never heard her complain as she and Rust walked away. After a short time Rust returned and the appellant continued to drive the car until they were apprehended by the officers.

The appellant's testimony is corroborated by several witnesses up to the time he and Rust left the lounge at midnight.

■ The appellant contends that, "The judgment of conviction is invalid under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution:

A. The punishment of death inflicted by the judgment of conviction is, under the circumstances of this case, a cruel and unusual punishment.

B. The judgment of conviction violates the Due Process Clause of the Fourteenth Amendment because based on a verdict incapable of being shown not to rest on an inculpatory theory without support in the evidence."

In support of his first position the appellant urges this court to invoke the reasoning in the dissenting opinion in Rudolph v. State of Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963). In that the appellant neither took nor endangered the life either of prosecutrix or of the baby she was carrying he insists that, "the punishment of death imposed by the judgment of conviction cannot properly be characterized as being other than cruel and unusual punishment prohibited by the provisions of the Eighth Amendment made applicable by the Due Process Clause of the Fourteenth Amendment of the Federal Constitution; and, accordingly, such judgment may not be permitted to stand consistently with those provisions."

This court is not in accord with the reasoning in the dissent in the Rudolph case and declines to follow it.

■ In support of his second position the appellant contends that the court's charge authorized his conviction upon any one of six inculpatory theories, and that two of such theories are each without support in the evidence. A general verdict of guilty was returned by the jury.

Appellant urges this contention for the first time in his brief and argument in this court.

In the absence of an exception to the court's charge, the contention urged as error is not before us for review.

It is concluded that the conviction is not invalid under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution, as the appellant contends.

It is insisted that the trial court erred in permitting Dr. Hundley to express his opinion before the jury that his findings were compatible with the prosecutrix having been raped, over appellant's objection that it would be hearsay and was prejudicial, and that the prosecutrix had not at this time testified.

The evidence reveals that two physicians examined the prosecutrix: Dr. Wallace examined her at the hospital at 3 A.M., March 15, which was immediately after the alleged assault; and Dr. Hundley examined her at home on March 16.

Dr. Wallace did not appear and testify. To the state's introduction of the hospital records of the physical examination and report made by Dr. Wallace of the prosecutrix, the appellant stated that, "We have no objection, Your Honor." The report in part reads: swollen cheeks, lips puffy, knot on head, superficial lacerations on back and shoulders, abrasion and bleeding on left knee, teeth marks on left breast, and non-motile sperm. Impressions: (1) multiple abrasions and lacerations; (2) six to seven months pregnant, viable fetus; (3) signs of forcible entrance are evident.

■ In considering the objection to the opinion of Dr. Hundley that his findings were compatible with the prosecutrix having been raped, together with Dr. Wallace's report, which was expressly admitted without objection, showing multiple abrasions and lacerations, teeth marks on breast, and that "signs of forcible entrance are evident." it appears that Dr. Hundley's opinion as complained of shows no reversible error.

■ Reversal is sought on the following objections to the court's charge on temporary insanity produced by the voluntary recent use of intoxicating liquor:

"Defendant further objects and excepts to the charge of the Court in its charge on intoxication and particular to that part of the instruction relating to definition on Line 13 of said charge alleging 'power to distinguish between right and wrong as to the particular act'. Defendant objects to phrase 'right and wrong' as not being proper definition."

The objections are too general and do not distinctly specify and point out wherein the charge was defective as required by statute, therefore they present nothing for review.

■ The evidence is sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.