Morgan Ernest BLACK, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 121–85.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 5, 1986.

Thomas W. Mills, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty. and Kathi Alyce Drew, Joe Revesz and Terry Hart, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of aggravated possession of a controlled substance with intent to deliver. Punishment was assessed at 12 years confinement in the Texas Department of Corrections. In an unpublished opinion, the Dallas Court of Appeals reversed the conviction, holding that the trial court's charge did not instruct the jury as to the application of the law of parties to the facts of the case. *Black v. State*, No. 05–83–00366–CR (Tex.App.—Dallas, delivered December 12, 1984). We granted the State's petition for discretionary review to examine the Court of Appeals' decision. We will vacate and remand.

Appellant was a passenger in a motor home driven from Los Angeles, California, to Dallas, Texas. Seventy-eight and a half pounds of phencyclidine (PCP) was recovered from the van in Dallas County. Appellant and two other individuals were in the van at the time of the arrest.

In pertinent part, appellant made the following objection to the charge:

The defendant objects in that *the Court's charge fails to apply the law to the specific facts* as the definitions pertain to "knowing possession," the definition of

"possession" itself, as to the circumstantial evidence definition, *as to the law of parties*, and as to the "mere presence" law.

(R. I–32, II–697, 700–701) (emphasis added). The objection was overruled. (R. II–706–708).

## I. Preservation of Error

■ The Court of Appeals presumably found this objection sufficient to preserve any alleged error because it reached the merits of appellant's ground of error. The State argues that appellant's objection was not specific enough to preserve error. We disagree.

Article 36.14, V.A.C.C.P. (Supp.1986), provides that a defendant shall present his objection to the charge, "distinctly specifying each ground or objection." Eight members of this Court found the following objection sufficient to preserve alleged charging error on the law of parties: "And our third objection, Your Honor, is that the Court has failed to specifically apply the law *of parties* to the facts in this case." *Govan v. State*, 682 S.W.2d 567, 569 (Tex. Cr.App.1985), (emphasis in original). That holding was reaffirmed by a plurality of this Court in *Brown v. State*, 716 S.W.2d 939 (Tex.Cr.App., 1986) (Campbell, J., concurring and dissenting, joined by T. Davis, McCormick and Miller, JJ.) (not yet reported).[1]

1. In *Brown*, the defendant made the following objection: "We would also object to the court's charge, Your Honor, on the grounds that it fails to apply specifically the law of parties to the facts in this case." At 942. Presiding Judge Onion, joined by two other judges, characterized *Govan*, supra, as an "aberration" and would have overruled it "to the extent of any conflict." *Brown*, supra, at 945 (Onion, P.J., joined by W.C. Davis and White, JJ.). However, that view did not receive the support of either a plurality or a majority of this Court. That view can be most accurately characterized as "plurality dictum." *Faulder v. Hill*, 612 S.W.2d 512, 516 n. 3 (Tex.Cr.App.1981) (Roberts, J., concurring and dissenting).

2. In his dissenting opinion, Judge Teague argues that *Govan*, supra, fails to apply the proper standard for reviewing charging error. On the contrary, Judge's Teague's analysis misapplies the harmless error test established by *Almanza*, supra.

Appellant's objection in the instant case is substantially equivalent to the objections in *Govan*, supra, and *Brown*, supra. Therefore, we hold that appellant's objection was sufficiently specific to preserve any alleged error and to apprise the trial court of his complaint.

## II. Law of Parties

The Court of Appeals held that the trial court did not instruct the jury as to the application of the law [of parties to the facts] of the case. *Clark*, supra. The Court of Appeals cited *McCuin v. State*, 505 S.W.2d 827 (Tex.Cr.App.1974) as its sole authority.

The State concedes that "the law of parties needs to be made applicable to the facts of the case when a timely, proper, specific objection is made on that ground." Brief for the State, p. 8. However, the State argues that such error may be harmless if the evidence clearly supports appellant's guilt as a principal actor. We agree.

■ Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *Brown*, supra; *Govan*, supra. Cf. Art. 36.19, V.A.C.C.P. (1981); *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) (standard for reviewing charging error for harm).[2]

In *Almanza* supra, this Court recognized that Article 36.19, V.A.C.C.P. (1981), requires this Court to reverse convictions for charging error only if actual harm to a defendant occurred. If no objection to the charging error was made, then "egregious harm" must have occurred. If an objection was made, then only "some harm" must have occurred. The presence or absence of actual harm is determined through an examination of the entire record. Thus, this Court abandoned the former rule of automatic reversal in favor of a practical standard requiring the demonstration of actual harm.

Judge Teague argues that harm is shown in the instant case because there is a "logical possibility" that the jury convicted appellant as a party. See also *Hayes v. State*, No. 955–82 (Tex. Cr.App., delivered March 12, 1986, pending on reh'g) (Teague, J., dissenting) (not yet reported) (arguing harm is present whenever there is the logical possibility of an improper verdict). However, that approach suffers from at least three de-

In the instant case, the Court of Appeals did not determine whether the charging error was harmless, despite the State's argument in its brief before that court. State's Brief in the Court of Appeals, at 28.[3] Therefore, although the Court of Appeals' holding that the trial court erroneously failed to apply the law of parties to the facts of the case is correct, the Court of Appeals must consider whether the charging error was harmless.

The judgment of the Court of Appeals is vacated and remanded to the Court of Appeals for consideration in light of *Govan*, supra, and *Brown*, supra.

CLINTON, J., concurs in result.

ONION, Presiding Judge, dissenting.

Appellant was convicted by a jury of aggravated possession with intent to deliver a controlled substance, to-wit: phencyclidine. The court, following the guilty verdict, assessed punishment at 12 years' imprisonment.

On appeal the appellant, inter alia, complained in ground of error No. 3 that "The trial court erred *in failing* to properly instruct the jury and *apply the law to the*

*facts on the issue of 'parties.'*" (Emphasis supplied.)

The Dallas Court of Appeals reversed the conviction on the basis of said ground of error No. 3, finding that while the charge contained the abstract definition of the law of parties "it did not instruct the jury as to the application of the law...." *Black v. State* (Tex.App.-Dallas, No. 05–83–00366–CR, December 12, 1984). We granted the State's petition for discretionary review to determine the correctness of the Court of Appeals' decision.

As the majority notes, the Court of Appeals presumably found the objection to the charge sufficient to preserve any alleged charge error on the law of parties because that court reached the merits of the ground of error without any mention of the objection. The majority finds the objection sufficient, but in my opinion the objection is woefully deficient to comply with Article 36.14, V.A.C.C.P., which requires that a defendant present to the court his objection to the charge "distinctly specifying each ground or objection." The trial judge here got "sandbagged," first by ap-

---

facts. First, Judge Teague only relies upon the charge itself in finding the presence of harm. He ignores the statement of facts, the jury argument and any other relevant documents in the record. In *Almanza*, supra, this Court made it clear that charging error must be reviewed in the context of the entire record. Second, Judge Teague prefers to apply theoretical generalities to all cases rather than realistic probabilities to particular cases. That approach returns this Court to pre-*Almanza* law, requiring automatic reversal of convictions for technical charging error, regardless of individual records. Third, even if Judge Teague's "logical possibility" test was appropriate, it incorrectly presumes that a jury would convict a defendant as a party even in the face of sufficient evidence to convict him as a principal. That presumption is itself illogical.

Using *Almanza*, supra, in its proper context, *Govan*, supra, only requires reversal of preserved charging error on the law of parties if the law of parties was actually necessary for the jury to decide the case. If the evidence was sufficient to support a conviction of a defendant as a principal, then a jury would rationally convict the defendant as a principal rather than as a party.

Judge Teague responds that the jury could have rejected whatever evidence might have shown appellant to be guilty as a principal. That argument might be persuasive if the record indicated that the jury had some basis for rejecting the evidence of the appellant's guilt as a principal, i.e., if the State argued that appellant was guilty as a party or if there was conflicting evidence of appellant's guilt as a principal. However, if there was no rational basis for the jury to reject the evidence of the defendant's guilt as a principal, why should this Court presume the the jury acted irrationally and unnecessarily relied upon the law of parties? Given the emphasis in *Almanza*, supra, upon actual rather than theoretical harm, the more practical approach of *Govan*, supra, properly presumes that the jury acted rationally and accepted the evidence of the defendant's guilt as a principal, unless the record indicates otherwise.

3. The absence of harmless error analysis is understandable. *Brown*, *Govan*, and *Almanza* were all decided after the Court of Appeals decision in the instant case. Thus, the Court of Appeals did not have the opportunity to apply this Court's most recent decisions regarding jury charge error on the law of parties.

pellant's counsel and now by the appellate courts.[1]

Further, and even more important, the trial court did in fact apply the law to the facts in the court's charge, something the Court of Appeals and the majority simply overlook, and thus do not even discuss. A distorted picture is presented.

The court permitted the appellant to orally dictate his objections to the charge. In nine pages of the record appellant orally presented nine objections and certain requested charges. At the outset the record reflects:

"The defendant objects, in that the court charge fails to apply the law to the specific facts as the definitions pertain to knowing possession, the definition of, quote, possession, unquote, itself, as to the circumstantial evidence definition, as to the law of parties, and as to the, quote, mere presence, unquote, law."[2]

On page 3 of the court's charge the court charged abstractly on the law of parties. No one faults this charge. Immediately following on page 4 of the charge is found:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Morgan Ernest Black, *either acting alone or as a party*, did, in Dallas County, Texas, on or about the 5th day of June, 1982, knowingly or intentionally possess, to wit: have actual care, custody, control or management, with intent to deliver a controlled substance, to wit: phencyclidine, in an amount by aggregate weight, of more than 400 grams, you will find the defendant guilty as charged in the indictment."

"If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty." (Emphasis supplied.)

Thus it can be seen that the court did in fact apply the law of parties to the facts, and had done so by the time of the objection.

The oral objection was general and multifarious. The objection is not even on a par with what in my opinion were deficient objections in *Govan v. State*, 682 S.W.2d 567, 569 (Tex.Cr.App.1985), and *Brown v. State*, 716 S.W.2d 939 (Tex.Cr.App.1986).[3] The objection did not distinctly point out to the court in what respect or respects the court had failed to apply the law of parties to the facts and failed to point out any deficiencies in the form used. This is not a case where the court charged only on the abstract law of parties with utterly no charge at all applying the law of the parties to the facts. See *Minor v. State*, 476 S.W.2d 694, 696 (Tex.Cr.App.1972). See also *Harris v. State*, 522 S.W.2d 199 (Tex.Cr.App.1975); *Perez v. State*, 537 S.W.2d 455 (Tex.Cr.App.1976); *Williams v. State*, 547 S.W.2d 18 (Tex.Cr.App.1977). This is what the majority overlooks and ignores, apparently misled by the Court of Appeals. Misreading the map (record), the majority has taken an unnecessary detour.

Since the majority has determined that error was preserved, what was said in *Brown* on original submission becomes relevant. There it was written:

"Article 36.14, V.A.C.C.P., expressly provides the defendant shall present his objection 'distinctly specifying each ground of objection.' See also 33 Tex. Jur.3rd, Crim.Law, § 2755, p. 417. The purpose of Articles 36.14 and 36.15 (Requested Special Charges) is to enable a

---

**1.** It has been said that appellate judges watch from on high the legal battle fought below, and when the dust and smoke of the battle clears they come down out of the hills and shoot the wounded.

**2.** The objection quoted in the majority opinion comes from the written "Defendant Black's Objections and Requested Jury Instructions" found in the record. These written objections are undated, bearing no file mark. Just how and when this document got into the record is not

clear. The document does not reflect on its face that it was timely presented before the charge was read to the jury. See Article 36.14, V.A.C.C.P. Further, it does not reflect that it was ever presented to or acted upon by the trial court. The written objections are not altogether the same as those orally presented to the court.

**3.** The majority views the objection as "substantially equivalent" to the objections in *Govan* and *Brown*.

trial judge to know in what respect a defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury. *Seefurth v. State*, 422 S.W.2d 931, 936 (Tex.Cr.App.1967), and cases there cited. 'These articles serve a salutary purpose in preventing the trial judge from being "sand-bagged" and in preventing unnecessary reversals.' *Seefurth* at p. 931. This can be accomplished only when the objections are sufficiently specific to point out the errors of which complaint is made. *Green v. State*, [144 Tex.Cr.R. 186] 161 S.W.2d 114 (Tex.Cr.App.1942); *McCain v. State*, [143 Tex.Cr.R. 521] 158 S.W.2d 796 (Tex. Cr.App.1942).

"Thus an objection which does not distinctly specify and point out wherein the charge is defective, presents nothing for review. *Meyers v. State*, 468 S.W.2d 847 (Tex.Cr.App.1971); *Smith v. State*, 439 S.W.2d 834 (Tex.Cr.App.1969); *Siros v. State*, 399 S.W.2d 547 (Tex.Cr.App.1966); *Green v. State*, supra. See also *Dozier v. State*, [143 Tex.Cr.R. 397] 158 S.W.2d 776 (Tex.Cr.App.1942).

"And it has also been said that an objection to the charge which is too general to call the court's attention to the defect or omission and which does not point out where the charge did not correctly set forth the law presents nothing for review. *Chanira v. State*, [167 Tex. Cr.R. 197] 319 S.W.2d 115 (Tex.Cr.App. 1958); *Bryant v. State*, [163 Tex.Cr.R. 463] 293 S.W.2d 646 (Tex.Cr.App.1956); *Soto v. State*, [161 Tex.Cr.R. 239] 275 S.W.2d 812 (Tex.Cr.App.1955). *Maloney v. State*, [119 Tex.Cr.R. 273] 45 S.W.2d 216 (Tex.Cr.App.1932), held that the objection was too general to call the court's attention to the omission complained of, that the mere presence at the scene would not constitute defendant a principal.

"In *Cain v. State*, [136 Tex.Cr.R. 275] 124 S.W.2d 991 (Tex.Cr.App.1939) (Opinion on Rehearing), the objection 'that nowhere in said charge has the court charged on the definition of the laws of principals, applying the law to the facts on principals, and charged on the converse of said application of the law to the facts' was held insufficient to call the court's attention to the contradiction between the charge on principals and the charge on alibi.

"In *Bilbrey v. State*, 594 S.W.2d 754, 756 (Tex.Cr.App.1980), the objection was that the charge failed to adequately apply the law to the facts. There it was held the objection was not specific enough to apprise the court of what was complained of and presented nothing for review.

"In determining whether the law has been properly applied to the facts the charge must read as a whole. In applying the law to the facts reference may properly be made to an abstract instruction on the law in another part of the charge. If there is a defect in the abstract portion of the charge and reference elsewhere is made thereto there may be error in the application of the law to the facts. See *Alvarado v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985). In the instant case the appellant by his objection did not distinctly specify whether there was error in the abstract portion of the charge, or whether in applying the law of parties to the facts the court should have required the jury to first find Guss Ross was the primary actor and make appellant's guilt dependent upon whether he was a "party," or whether it should have submitted the question of whether the co-defendant Calahan was the primary actor, or whether both Ross and Calahan were primary actors, etc.[1] [[1] It is noted that the co-defendant Calahan made the same objection to the charge at the joint trial. If it can be argued that the objection was sufficient, how should the court have responded in each of the separate charges given to the same jury?] The objection did not point out any defect in form, or urge the wrong test under § 7.02 had been used or anything of this nature. The general objection simply did not give an opportunity to the trial court

to correct any defect. It did not tell the trial court in what respect he regarded the charge defective. Further, if the objection can be regarded as sufficient, it gives the appellant on appeal a chance to claim the objection meant many different things never revealed to the trial judge.

\*    \*    \*    \*    \*    \*

"... When a jury charge on parties is necessitated by the evidence, the charge may take various forms depending upon the evidence as the form books indicate. These submissions are not always given without difficulty. See generally Foreman and Jones, Submitting Law of Parties in a Texas Criminal Prosecution, 33 Baylor Law Review 267. And this is also true where an issue is raised by the evidence whether the defendant is criminally responsible for the commission of the offense by his own conduct, or by the conduct of another, or by both.

"In *Foreman* and *Jones,* supra, it is written:

" 'It is not unusual for a charge to apply the law of parties to the facts by an instruction allowing the jury to convict on finding that defendant, either alone or acting as a party with another person, did the act charged [citing Morrison and Blackwell, New Penal Code Forms, C–7.01 at 100–01]. An instruction of that kind is permissible if the evidence raises both the theory that the defendant did the act charged and the theory that another person participated with defendant in doing that act.'

"*Gilmore v. State,* 666 S.W.2d 136, 157 (Tex.App.-Amarillo 1983) (Discretionary Review Refused—Jan. 25, 1984), held that the evidence supported the following charge:

" '... if you believe from the evidence beyond a reasonable doubt that on or about the 6th day of November, 1980 ... Vernon Ray Gilmore, *either acting alone or with another as a party to the offense* ... did then and there knowingly cause the death of ... Richard Grier Luster ... you will find

the defendant guilty of the offense of murder.... [emphasis added]'

"The *Gilmore* court then wrote:

" 'Since we have concluded that the evidence raised the issue of appellant's criminal responsibility with Samantha Davidson, it follows that the above stated charge properly applied the law of parties to the facts of the case....' (Emphasis added.)

See *Minor v. State,* [476 S.W.2d 694 (Tx. Cr.App.1972)] supra; *Rivas v. State,* 496 S.W.2d 600, 602 (Tex.Cr.App.1973).

"In McClung, 'Jury Charges For Texas Criminal Practice' (Rev.Ed.1985), p. 10, it is written:

" '(2) where the issue is raised or there is a question or dispute as to whose activity caused the specific result, such as who fired the shot, or whose shot hit deceased or whose blow or kick hit the victim in the head and caused serious bodily injury then the charge should incorporate a phrase or clause to take care of such situation:

" '(After giving the law of parties, as in the first paragraph of (1) next preceding, which starts with "Each party to an offense," follow with this as the second paragraph:

" ' "Now, if you find from the evidence beyond a reasonable doubt that on or about the ___ day of ___, 19___, in ___ County, Texas, the defendant, Y, *either acting alone or with (or 'another') as a party to the offense,* as that term is hereinbefore defined, did intentionally or knowingly (cause serious bodily to D by beating him with his fists and kicking him with his feet), then you will find the defendant guilty of aggravated assault." ' (Emphasis added.)

See also McCormick and Blackwell, Texas Practice, Texas Criminal Forms and Trial Manual, § 84.01, pp. 301–302; Branch's 3rd Ed., Texas Anno. Penal Statutes, Vol. 1, § 7.02, p. 257, form 2.

"In view of the evidence in the instant case, it appears that the trial court at-

tempted to charge as approved in *Gilmore* and suggested by *McClung*, although the charge is clearly no model."

The objection failed to distinctly specify or point out any defect in the charge and did not comply with Article 36.14, V.A.C. C.P. No error was preserved. Further, if the objection was that the court had not applied the law of parties to the facts,

appellant overlooked the fact that the court had done just that.

Still further, where the evidence clearly supports a defendant's guilt as a "principal actor" and the court authorizes his conviction for "acting alone," any error of the trial court in also charging on the law of parties is harmless. See *Brown*, supra; *Govan*, supra. The evidence in the instant case clearly supports appellant's guilt as a "principal actor." [4] I doubt the majority

**4.** It appears that the State's Brief adequately summarizes the facts:

"The evidence contained within the record reveals that on June 2, 1982, Roy Wunderlich, a Los Angeles Police Officer assigned to investigate matters involving narcotics, began surveillance action at 7814 Dalton Ave. in Los Angeles, California, the home of Frederick Gene Cooper, a co-defendant in the case at bar. (R. III-416, 417, 425, 426, 428, 429). Officer Wunderlich was in possession of some specific information, the exact nature of which was not revealed at trial, which placed Cooper under suspicion. (R. III-428, 429). Officer Wunderlich saw Cooper leave his residence in a Transvan Motor Coach—a van-type vehicle which was 'not quite a motor home'— California license plate number 588 YOX,[1] [[1] Registered owners of the van in question were revealed to be Frederick Gene Cooper or Lois O. Cooper of 7814 Dalton Ave. in Los Angeles, California. (R. III-529).] and proceed to a repair shop where the officer observed activity which led him to believe that Cooper was preparing for a trip. (R. III-431, 432, 433). At one point, Cooper went to the residence of one Willie Sanford, also known as 'Black Willie,' where he joined up with two other individuals—Appellant and John Henry McCovery.[2] [[2] Another co-defendant at Appellant's trial.] (R., III-433-439). Luggage was loaded into the van, as were two five gallon black cans which appeared to be heavy and full. (R. III-439, 440). The cans were placed in the rear of the van. (R. III-440). Officer Wunderlich testified that ether, a substance required in large quantities for the manufacture of phencyclidine, was a substance commonly packaged in five gallon cans.[3] [[3]Officer Wunderlich testified that 'clandestine labs,' which specialize in the manufacture of phencyclidine as well as many other drugs, are often housed in mobile homes. (R. III-419).] (R. III-424,425).

"Officer Wunderlich followed the van containing Appellant and his companions to a car wash owned by Willie Sanford where he saw the occupants obtain three five gallon white plastic buckets which were put into the same area of the van as the black cans.[4] [[4]Officer Wunderlich also gave testimony that, in order to manufacture phencyclidine, one needed certain materials, including a scale to weigh

power and plastic buckets. (R. III-420-424).] (R. III-441,443). Officer Wunderlich testified that he now had reason to anticipate that Appellant and his companions would leave Los Angeles to manufacture phencyclidine and thereafter return to distribute the narcotics. (R. III-444-445).

"Acting on his suspicions, Officer Wunderlich followed the van for a 45 minute drive around the Los Angeles area, onto the Harbor Freeway, and subsequently through the rest of the State of California, Arizona, New Mexico and Texas into Dallas, Texas, where Appellant and his companions arrived at 4:30 a.m. on June 4, 1982. (R. III-447, 448, 449-452). The van was traced to 9179 Orbiter in Northeast Dallas, a residence which backs up to a large open field.[5] [[5] Phencyclidine is also associated with open fields, due to the strong odors involved. (R. III-420).] (R. III-452). After contacting Dallas area law enforcement officers, a surveillance was established on the house and the van. (R. III-455).

"During the course of the surveillance, Officer Wunderlich testified that he walked around the field in back of the house on Orbiter where he was able to detect strong odors associated with phencyclidine. (R. III-462). Officer Wunderlich described those odors, and his ability to detect them, in the following manner:

"Basically, the base is ether, and its kind of a—to describe it, would be a sweet, pungent odor. And its like anything else, when somebody's making chocolate chip cookies, you know that they're making chocolate chip cookies. When someone's making PCP, I know they're making PCP.

"And I've never smelled anything else that smells like PCP when its being manufactured. Quaalude has its own odor, cocaine has its own odor, methamphetamine has its own door (sic). PCP smells exactly like PCP being manufactured.
(R. III-463).[6] [[6] At trial, many witnesses used the terms 'phencyclidine' and 'PCP' interchangeably. It is the State's understanding that, as a matter of common knowledge, phencyclidine is also known, in the venacular, as either 'PCP' or 'angeldust.']

"On June 5, 1982, Officer Wunderlich prepared an affidavit for a search warrant of both the house on Orbiter and the van. (R.

will dispute that. Even if the error was preserved, the error is harmless. Ground of error No. 3 should have been overruled by the Court of Appeals. Since instead that court reversed on the basis of ground of error No. 3, its judgment should be reversed and the cause remanded for consideration of the other grounds of error.

The majority, however, finds the error was preserved by the general multifarious objection, that the Court of Appeals was correct in holding that the trial court erroneously failed to apply the law of parties to the facts, vacates the judgment and remands the cause for the Court of Appeals to consider whether the charging error was harmless. What a waste of already overburdened judicial resources. The matter is properly before this Court. If the majority is going to persist in holding that the trial

court did not apply the law of parties to the facts, despite the charge to the contrary, then it should go ahead and determine the question of harm. If harm is found, the cause can be remanded immediately to the trial court and eliminated from the appellate orbit.

Instead, the majority wants the Court to consider "whether the charging error was harmless." The Court of Appeals has already determined that question. It held the error was harmful because of the penalty assessed, and said so on the very face of its brief opinion. Upon remand, if the Court of Appeals once again decides the error was harmful, the conviction will once again be reversed on the basis of ground of error No. 3, and the question is likely to be back before this Court for decision. If we then disagree with the Court of Appeals as

III–467). Acting on this affidavit, Elias Nava, an investigator with the Texas Department of Public Safety Narcotics Division, obtained a warrant from Judge Cole, a Dallas magistrate, at approximately 1:55 p.m. on June 5, 1982. (R. III–533, 545, 546).

"Meanwhile, during the time in which the affidavit was being prepared and the search warrant obtained, officers surveillancing the van observed the van leave its position on Orbiter Drive and head southbound on Central Expressway. Acting on orders from Captain Wesley Crites of the Narcotics Division of the Texas Department of Public Safety, officers stopped the van southbound on Central Expressway near the Caruth-Haven exit between 11:20 and 11:30 a.m. (R. III–588, 589, 602).[7] [7 Officers testified that they had reason to believe that the van contained a large amount of PCP. (R. III–602).] As Scott Hamilton, the northeast patrol officer who ordered the van off the freeway by flashing his red lights, testified, when he approached the vehicle a 'chemical-type smell hit me as I came up near the door, the driver's door.' (R. III–591). The odor became even stronger as he opened the driver's door to get the driver, whom he identified as Cooper, out of the van. (R. III–591, 592). Gary Vineyard, a Dallas Police Officer who assisted in removing Appellant and McCovery from the van, also testified that he noticed an odor associated with phencyclidine as he approached the van. (R. III–616, 167). The odor was 'considerably stronger' inside the van. (R. III–617, 618). Appellant and his two companions were subsequently arrested. (R. III–595).

"Frank Montana, a Sergeant with the Texas Department of Public Safety, drove the van from the scene of the arrest and parked it for

a time in a parking lot near Central Expressway and Park Lane. (R. III–631, 632). From there, Sergeant Montana drove the van back to Orbiter Drive. (R. III–632). Officer Vineyard testified that he stayed with the vehicle the entire time. (R. III–619). The testimony was unequivocable that from the time the occupants were removed until the van was searched, nothing was added to nor subtracted from the contents of the van with the exception of the occupants. (R. III–608, 622, 633).

"Once returned to Orbiter Drive, the search warrant was executed on the van and the van was searched. (R. III–546). Again, officers detected a strong odor prior to opening the van. (R. III–547). The search revealed two five gallon black cans stored inside green trash bags; the cans containing a liquid. (R. III–456, 457, 570). These cans looked 'exactly like the two cans' that Officer Wunderlich had seen placed in the rear of the van in Los Angeles. (R. III–471). Also found during the course of the search of the van was a professional-type weighing scale. (R. III–557).

"Chemical analysis, by Manuel Valadez, a Texas Department of Public Safety chemist, of the liquid in the two five gallon black cans revealed that the contents was phencyclidine with an aggregate weight of *78.5 pounds or 1,519 grams.* (R. III–635, 639, 640, 643, 644). This was enough phencyclidine to make 37,900 fully dipped cigarettes which, at a Los Angeles street value of $30.00 a cigarette, constituted $1,137,000.00 of illegal phencyclidine. (R. III–669, 694, 677)."

to harm, the cause will again be remanded for consideration of the other grounds of error. And if so, the possibility lurks that the cause could then return to this Court. This June 1982 offense and March 1983 conviction may be kept in heavenly appellate court orbit for years to come. I dissent vigorously to the manner of the disposition of this cause by the majority.

WHITE, J., joins this opinion.

TEAGUE, Judge, dissenting.

The judgment of the Court of Appeals should be affirmed without remand, except perhaps in light of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985). *Govan v. State*, 682 S.W.2d 567 (Tex.Cr.App.1985) should be overruled with regard to the language approved on page 3 of the majority opinion:

> [T]he State argues that such error [failure to apply the law of vicarious culpability to the facts] may be harmless if the evidence clearly supports appellant's guilt as a principal actor. We agree.

A jury should never be authorized to convict on a theory not supported by evidence. To the extent that *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App.1979), and other cases support this proposition, they were not overruled by *Almanza*. *Almanza* merely held that such defects do not produce a reversal automatically without an inquiry regarding the degree of harm, if any.

When there is evidence that the criminal acts alleged in the indictment were committed by a person other than the accused, but that the accused is nevertheless criminally responsible for those acts, it is of course not erroneous for the trial judge to authorize conviction of the accused upon this theory. But unless the jury is authorized to do so by an instruction which specifically applies the law of vicarious culpability to the facts, expressly requiring the jury to find, among other things, that some person other than the accused committed the offense alleged, the jury charge is objectionable. The majority admits as much by concluding that it was error for the trial judge to refuse an application paragraph on the law of parties in the instant cause.[1]

The only remaining inquiry is that required by *Almanza*. Since the error was sufficiently preserved, according to the majority's analysis, appellant's conviction must be reversed if "some harm" has been demonstrated.

If we hold that the jury was authorized by evidence to convict the appellant as a nonprimary culpable party, we cannot simply assume without knowing that it did not do so, regardless of whether we think the evidence was legally sufficient to support his conviction as a primary actor. The jury, as sole factfinder, was free to conclude from the evidence that appellant was not a primary actor, even if the evidence was also sufficient in contemplation of law to support a contrary conclusion. Thus, as an appellate tribunal, we are not at liberty to assume that the jury in this cause did not convict the appellant under a theory of vicarious culpability.

In order to find the error harmless it would, therefore, be necessary to conclude not only that the evidence was sufficient to support conviction as a primary actor, but also that the jury did in fact convict upon this theory. And this we do not and cannot know. Therefore, if for purposes of argument we assume rather that the jury did not convict appellant as a primary actor, can we say that he did not suffer "some harm" from the concededly erroneous failure of the trial judge to apply the law of vicarious culpability to the facts of this case, admitting as we must that the evidence would have been adequate to raise the issue and to support an affirmative finding by the jury upon it? *Govan* auto-

---

1. I am compelled to disagree with the conclusion that Presiding Judge Onion reaches in the dissenting opinion that he files, that the application paragraph in the charge on the law of parties was sufficiently specific to meet appellant's objection. To have met the appellant's objection, it would have been necessary for the trial judge to apply specifically what he charged the jury in the abstract on the law of parties. His failure to do so constitutes error.

matically answers this question in the affirmative. *Almanza* forbids automatic answers.

In the face of a timely and specific objection, such as the one interposed in this case, a showing of "some harm" has been demonstrated because there is a logical possibility, supported by evidence, that the jury convicted appellant upon a theory of vicarious culpability without being expressly informed of the facts it must find before doing so. The rule of *Govan* precludes a finding of harm in such context.

I would, therefore, overrule *Govan* to the extent that it holds a failure to apply the law of vicarious culpability to the facts is automatically harmless whenever there is sufficient evidence to convict the accused as a primary actor. Moreover, to remand this case for reconsideration by the Court of Appeals would be wasteful of judicial resources. But in any event I would affirm the Fifth Court of Appeals or, at most, vacate and remand for reconsideration in light of *Almanza* only.

In this connection, I agree with the majority's characterization of *Almanza* in footnote 2, except as follows. First, although *Almanza* speaks of "actual harm," I do not understand the Court's opinion in that case to suggest that a reliable prediction of a jury's actual reasoning can ever be made. Second, I do not understand *Almanza* to imply that an examination of the pleadings, evidence, and jury argument is to be given greater deference in the assessment of harmfulness than the jury charge itself.

Having said that, my disagreement with some of *Almanza*'s language is a matter of record. See, *Hayes v. State* (Tex.Cr.App. No. 955–82, delivered March 12, 1986, Teague, J., dissenting). I am convinced that harmfulness can never rationally be made to depend upon the probability of a jury returning a different verdict absent charging error. The data necessary to make such predictions are simply not available to this Court. It is far better in my view, and more in keeping with the structure of our legal system, to insist upon legally acceptable jury instructions and leave factfinding to the triers of fact.

Nevertheless, while there may be a certain tension between my "logical possibility" test, articulated in *Hayes*, and a literal reading of certain language in *Almanza*, I do not regard the two as patently inconsistent. Indeed, it is clear to me, and should be equally clear to anyone who has read this Court's opinions applying *Almanza*, that no uniformly comprehensible method is at work. This only goes to show that *Almanza* is in need of some refinement. My opinion in *Hayes* was an effort in this direction. To my knowledge, no other member of this Court has suggested an alternative methodology which can be intelligibly applied in practice.

With these cautions in mind, several points should be made about my assessment of the instant cause. Although I have looked principally to the jury charge, consistent with my opinion in *Hayes*, I have not simply ignored the statement of facts and arguments of counsel. With regard to the former, I find, as does the majority, that evidence was adduced raising an issue of vicarious culpability. Thus, there was a factual, not merely a theoretical, basis upon which the jury in this cause might have convicted the appellant as a nonprimary culpable party. Had there been no evidence to this effect, it would have been erroneous for the trial judge to authorize conviction upon this theory, either abstractly or by means of a complete application paragraph. But that is not the issue. In the present context, it is enough to observe that the question of vicarious culpability arose during trial, not by gratuitous submission of a jury question unsupported by evidence, but by the evidence itself.

Secondly, the majority fails to discuss, not only those portions of the statement of facts pertinent to the inquiry required by *Almanza*, but any relevant portion of the jury argument either. If this Court continues to insist that the entire record should be examined for harm, surely it is reasonable to expect that relevant portions will be

identified in its opinion and that the significance of such portions will be revealed.

With specific regard to the jury argument, it is true that vicarious culpability was not strenuously urged by the State as a distinct theory upon which the jury might predicate a finding of guilt. In spite of my belief that the probable impact of argument by counsel on jury deliberations cannot fairly be gauged without rank speculation, I will concede that juries as a whole are probably somewhat less likely to convict upon a theory not urged by either party than upon a theory strenuously urged. However, without speculating, I am unable to say how much less likely, if at all, it was in this case. Accordingly, I am inclined to afford the circumstance of jury argument little weight in my harm analysis. If I could garner a majority of this Court, I would abandon the emphasis on jury argument altogether in determining whether there has been "some harm" under the test prescribed by *Almanza.* Correct jury instructions are, among other things, designed precisely to eliminate the need for speculation by appellate courts.

Be that as it may, the record in the instant cause, taken as a whole, does not demonstrate that the erroneous jury instructions were harmless, nor does the majority disclose which parts of the record should be deemed relevant in this connection, or why. True, I have looked to the charge itself, but what is wrong with that? *Almanza* does not prohibit my doing so, and the charge is, after all, most important to resolve the issue. The majority, on the other hand, evidently assigns no importance to the fact that the jury was expressly authorized to convict appellant without being required specifically to find each element necessary for a determination of vicarious culpability.

I have also looked to the evidence and found in the record some support for a proper jury instruction on vicarious culpability. I do not take this to be an indication of harmlessness.

I have looked to the jury argument. There is nothing in it strongly suggesting that the jurors convicted upon a theory of vicarious culpability. But there is also nothing in it strongly suggesting that they did not. In any case, the jury argument does not militate in favor of finding harmlessness, and the majority itself does not claim otherwise.

I am astonished, in light of this record, that the majority represents the *Govan* rule to be based on "realistic probabilities." There is, on the contrary, nothing in its analysis which could honestly be called either realistic or probabilistic. The majority instead contends that a jury acts irrationally whenever it finds an accused guilty as a nonprimary culpable party in the face of evidence not legally insufficient to convict him as the primary actor. This proposition is outrageous! Soon this Court will be saying that a jury is irrational when it convicts of a lesser included offense upon evidence not legally insufficient to convict of the greater, or some other such nonsense. This kind of reasoning is backwards, takes no account of the proper role alternative jury instructions serve in our system of jurisprudence, and proclaims the demise of law in the factfinding process.

I recognize, of course, that this Court has ordered this cause remanded to the Court of Appeals for a harm analysis, which perhaps explains the absence of any harm analysis in its own opinion. This would at least make some sense to me if the case were remanded for reconsideration in light of *Almanza.* But instead, the question of harm has been remanded for consideration in light of the *Govan* rule only. To iterate the blasphemy, the *Govan* rule, succinctly stated, provides that "[w]here the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." See, p. 675. This is a "per se rule" and does not indicate a need for remand. Accordingly, the Court of Appeals can be expected simply to apply the rule in a straightforward fashion without regard to the sufficiency of evidence to support conviction, particularly since the appellant did not complain of evidentiary

insufficiency on appeal. The majority's action today perpetuates a rule which is at odds both with logic and with *Almanza.* And it ill serves the Dallas Court of Appeals, which will inevitably be left "groping in the dark for a light switch."

In view of *Almanza,* I therefore urge the Dallas Court on remand to clearly state its reasons for finding the error in this case harmless, if it does so—to lay on paper the evidence which affirmatively demonstrates no prejudice to the appellant here. Perhaps the effort alone will prove illuminating, since it will surely confirm the futility of such an enterprise. But even if it does not, at least bench and bar will have been given the analysis promised by *Almanza,* and not the wrongheaded "automatic affirmance" of *Govan.*