# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00211-CR

**Edward Bustos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2011-598, HONORABLE GARY L. STEEL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Edward Bustos appeals his conviction for the offense of burglary of a habitation. *See* Tex. Penal Code § 30.02.[1] In a single point of error, appellant challenges the sufficiency of the evidence to support his conviction. Because we conclude that the evidence was sufficient, we affirm the judgment of conviction.

### BACKGROUND

On November 2, 2011, Sarah Stewart, who was the nanny for Dan Cable, picked up one of Cable's children early from school because the child was sick and took the child to Cable's

---

[1] In the same proceeding, appellant was convicted of the offense of evading arrest with a previous conviction for the same offense. *See* Tex. Penal Code § 38.04. He pleaded guilty to this offense, and the jury assessed punishment at ten years' confinement and a $10,000 fine. The trial court sentenced appellant and entered judgment in accordance with the jury's verdict. Appellant does not challenge this judgment of conviction.

house. Upon arriving at the house, Stewart and the child observed a person in a white Grand Am parked on the street in front of the house. Stewart called Cable to see if the house was being shown to potential buyers as it was on the market at the time, but he told her that it was not. Stewart and the child proceeded to go inside the house by a side door. Once inside, Stewart observed a man standing in the house for "five seconds or so" before he "just ran out." When Stewart went back outside, the Grand Am was gone.

Stewart called the police, and officers arrived at the house shortly after her call. The officers questioned Stewart and the child about the man in the Grand Am and the man in the house. Stewart provided the officers with a description of the man who was in the house that included that he was wearing blue jeans and a red sweatshirt with a hood. The police searched the house and began searching for the two suspects and the Grand Am. An officer in the area observed appellant "coming out of the brush" and, when the officer yelled "Sheriff's office. Come over here," appellant "kept on running." A perimeter was set up, and appellant was apprehended. He was not wearing a red sweatshirt at the time. After appellant was taken into custody, two officers had appellant stand with them in a parking lot near Cable's neighborhood, and another officer drove Stewart by twice. Stewart identified appellant as the person who she saw in the house.

When the police conducted the search of the house, they found that a window in the back of the house had been broken, and drawers and other items had been opened or moved, including iPads and a laptop that were stacked together on the kitchen table. The officers did not find blood or fingerprints at the scene but one of the officers found a shoe print on one of the pieces

2

of glass from the broken window. An officer also found a red sweatshirt with a hood in an open area about three-tenths of a mile from the house, approximately 100 feet off the road.

At trial, the State's witnesses included Stewart, Cable, and Cable's child. Stewart and the child testified about what happened after they arrived at the house on the day of the incident. Stewart identified appellant as the person who she saw in the house. She testified that she was "maybe ten feet" from him in the house, answered "yes, ma'am" when asked if she got a good look at him, and testified that "[appellant] was wearing a red hoody and blue jeans. And [she] noticed that he had really short brown hair, his height and build, and then he was like lighter skinned." Stewart also testified about her identification of appellant after he was taken into custody and standing with officers in the parking lot near Cable's neighborhood.

The child testified about the man who he saw in the Grand Am, including providing a description, but he did not see the person in the house.[2] Cable testified about the differences in the house from its condition when he left it that morning and the items that had been moved around inside the house, including the iPads and laptop. He also testified that he had never met appellant and that he would not have given appellant consent to be in his house. Several officers testified about the incident, including their investigation, the apprehension of appellant, the place where the

---

[2] The child testified that the man in the Grand Am "looked like he was from somewhere else and he had on a little scarf around his head" and that the scarf was green. During cross-examination, the child further testified that "[the man] was like from a different state or like country or something" and confirmed that he had identified the man from a lineup of pictures. Stewart also testified that she saw someone in the Grand Am when they arrived at the house and that the person "started his car" when she was on the phone with Cable prior to going into the house. She, however, was unable to provide a description of the man in the Grand Am.

red sweatshirt with hood was found, and the condition of the house. Appellant did not testify and did not call any witnesses.

The exhibits included photographs taken of the house after the police arrived, aerial photographs of the area, the broken glass with the shoe print, appellant's shoes, the red sweatshirt with hood, and a letter report from the Texas Department of Public Safety (DPS) comparing the shoe print on the broken glass to appellant's shoes. The author of the report opined that "the apparent left shoe impression observed on the broken glass . . . was not made by the suspect's left shoe" but noted that "apparent glass [was] recovered from the suspect's shoes."

The jury returned a verdict of guilty and assessed punishment at confinement for 18 years and an $8,000 fine. The trial court sentenced appellant and entered judgment in accordance with the jury's verdict. This appeal followed.

**STANDARD OF REVIEW**

Appellant's point of error challenges the legal sufficiency of the evidence to support the jury's verdict. When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The jury, as the exclusive judge of the facts, is

4

entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007).

## DISCUSSION

In his sole point of error, appellant contends that the evidence was legally insufficient to support the jury's guilty verdict for the offense of burglary of a habitation, either as the primary actor or as a party. The jury was instructed that "a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he intentionally or knowingly enters a habitation with the intent to commit theft" and "a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he intentionally or knowingly enters a habitation and attempts to commit theft." *See* Tex. Penal Code § 30.02. The jury also was charged under the theory of the law of parties. *See id*. § 7.02(a)(2).

Appellant does not dispute that the house was burglarized on the day of the incident but challenges the sufficiency of the evidence to support his conviction as a party or as the actor. Appellant focuses on the element of identity. He urges that no forensic evidence connected him to the house, the Grand Am, or the red sweatshirt, and that his mere presence in the vicinity of the house is not sufficient to support the conviction. Appellant points to the DPS report in which the author opined that the "impression observed on the broken glass . . . was not made by the suspect's left shoe." He also focuses on the facts that no gloves or fingerprints were found, the Grand Am was never located, and there was no blood at the scene. Evidence showed that appellant's hands were bloody when he was taken into custody.

5

Other evidence, however, supported a finding that appellant personally committed the offense. Stewart identified appellant as the man who was in the house. She also testified about her identification of appellant after he was apprehended and standing with officers in the parking lot near Cable's neighborhood:

[Prosecutor]: Can you tell the jury why it is that you were able to recognize the suspect from what you had observed in the house? What was similar about him?

[Stewart]: What he was wearing. He was wearing blue jeans. And they held up the red sweatshirt next to him and then his height and build and then his hair was the -- short and brown.

[Prosecutor]: Is there any doubt at all in your mind that the person that you saw at the golf course parking lot was the same person that was in that house?

[Stewart]: No, ma'am.
.
[Prosecutor]: Was there any pressure placed on you by the officer in the car with you to pick him out as the suspect?

[Stewart]: No, ma'am.

In addition to Stewart's eyewitness testimony, Cable, the owner of the house, testified that he had never met appellant and would not have given consent to appellant to be in the house. The evidence also showed that, although appellant was not wearing the red sweatshirt when he was apprehended, an officer found one three-tenths of a mile from the house, and an officer testified that he observed red "lint" on appellant's shirt after he was apprehended that "could have come from the red lint inside the hoody." Further, although the author of the DPS report on appellant's shoes opined that the shoe print on the broken glass was not from appellant's shoe, the

6

author did not testify at trial. The author also noted in the report that slivers of glass were found on appellant's shoes. Appellant's shoes and the broken glass with the shoe print were admitted into evidence, and an officer who compared the print and appellant's shoe testified that, in his opinion, appellant's shoe was the same type of shoe as the one that made the print. As to the lack of blood at the scene and appellant's bloody hands, evidence showed that appellant cut his hands when he was jumping over a barbed-wire fence while running away from the police.

Viewing the evidence in the light most favorable to the verdict and assuming that the jury resolved the conflicts in the evidence in favor of the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant personally committed the offense of burglary of a habitation. *See Jackson*, 443 U.S. at 319. Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict and do not address the evidence to support his conviction as a party. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992))) ("When the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge."); *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (citing *Rabbani* for principle that, when court undertakes sufficiency review and trial court's charge authorized jury to convict on more than one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories").[3]

---

[3] In the argument section of his brief, appellant urges that the trial court erroneously charged the jury on the law of parties because no evidence was presented at trial to support this theory. Appellant objected to the charge's inclusion of the law of parties at trial. We conclude, however,

**CONCLUSION**

Because we conclude that the evidence was legally sufficient to support the conviction for the offense of burglary of a habitation, we overrule appellant's point of error and affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: May 14, 2014

Do Not Publish

---

that any such error was harmless. *See Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) ("[W]here, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless."); *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless."); *Brown v. State*, 716 S.W.2d 939, 945–46 (Tex. Crim. App. 1986) (holding the claimed error in charge, if any, was harmless when "appellant's conduct alone [was] sufficient to sustain the conviction").