Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



VIRGIL RAYMOND STEWART, JR.,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00272-CR

Appeal from the

184th District Court

of Harris County, Texas

(TC# 987643)




O P I N I O N

           This is an appeal from a conviction for the offense of possession of
methamphetamine in an amount greater than one gram and less than four grams enhanced
by the allegation of two prior felony convictions. Appellant pleaded not guilty to the court
and the court assessed punishment at thirty-five years’ imprisonment. We reverse
Appellant’s conviction and remand this cause for a new trial.
I. SUMMARY OF THE EVIDENCE
           Sarah Conley testified that she was Appellant’s parole officer. On June 17, 2003, she
and Appellant had scheduled a home parole visit at Appellant’s home at 301 Graham Street
in Baytown, Texas. As she approached the house, she encountered an individual who asked
if he could help Conley. When she identified herself as Appellant’s parole officer, the
individual ran into the house and slammed the door. Seconds later he came out of the house
and apologized stating that he had been up all night tattooing people and he was not thinking
clearly. They entered the house through the back door, and she observed a hose running out
the back door. The house smelled like rotten eggs or leaking natural gas. One of the men
present stated that Appellant was not there but he would try to call him. There were two
males and a female in the house. Then Conley was taken into the living room. The doors
to the rest of the house were closed. She was informed that Appellant could not be reached. 
Conley asked the man to tell Appellant to call her to reschedule the visit. Conley became
suspicious and upon leaving the residence, she notified the Baytown Police Department of
her concerns.
           On June 18, 2003, Appellant called Conley and stated that he had a new girlfriend and
he was at her house recovering from an illness. He gave Conley the address of the house. 
Appellant stated that his home had been raided because a girl named Sissy had been making
methamphetamine at the house. She advised Appellant to call the Baytown Police
Department.
           Patrick O’ Dell testified that he was the director of the special audit division and was
the chief investigator for the Harris County Appraisal District. He stated that his
investigation revealed that Appellant was the owner of the home at 301 Graham in Baytown
Texas.
           Detective Chris Zucha testified that he was a police officer with the police department
in Baytown, Texas. He was assigned to the narcotics division. On June 17, 2003, Detective
Zucha became involved in an investigation at the residence on Graham Street. He spoke to
Sarah Conley and, as a result of that conversation, he and his partner traveled to that location. 
When they arrived, they encountered a man named James Stutts. He stated that the residence
belonged to Appellant. Stutts stated that he, Stutts, had arrived at the house within the last
two days. The officers found narcotics paraphernalia on Stutts and he was arrested.
           The officers then made contact at the house with a female named Donna Kahn. They
also found narcotics paraphernalia on her person and she was arrested. They observed some
large garbage cans in plain view by the back door of the house. They saw beakers, syringes,
empty antihistamine packages, and empty fuel supplement containers. The officers suspected
that the location was being used as a methamphetamine lab. They obtained a search warrant
and upon entering the residence, they found anhydrous ammonia containers, directions on
how to produce methamphetamine, and illicit narcotics. The search area consisted of a main
residence, a converted garage residence, and a car. Paraphernalia was found in all three
locations. Appellant was never encountered at the residence.
           Other officers who assisted in the search testified that three envelopes addressed to
Appellant were found in the mailbox, and chemicals used to manufacture methamphetamine
were found in a locker in the detached garage residence. Further, there was evidence that an
anhydrous ammonia container was found in the kitchen.
           Officer Jimmy Pemelton, a sergeant with the Texas Department of Public Safety
Narcotics Service, testified that he worked specifically on cases involving methamphetamine
and methamphetamine laboratories. He was called out to the 301 Graham location to aid in
the investigation. When he inspected the house it looked like a typical methamphetamine
lab. The house was unclean with a strong chemical smell. The search revealed connection
tubing, coffee filters, containers of ammonia, coke bottles filled with different layers of
strange colored liquids, solvents, and camping fuel. Taken together, these items were
indicative of methamphetamine production. These items were spread out between all of
three search areas. Male clothing was found in the living areas, and the witnesses believed
that people were living in both residences.
           Steve Dorris, a detective with the Harris County Organized Crime Unit, testified that
he helped in the investigation at Appellant’s house. He and another officer encountered an
individual named James Stutts at the house. They found a syringe on his person and he was
placed under arrest. They then went to the back door of the residence where they made
contact with a woman named Donna Kahn. She stated that the house belonged to Appellant
and she had been staying there for a few days. She stated that Appellant had left the day
before, and she had not spoken to him since. She responded affirmatively when she was
asked if she had been left in care and control of the house. After explaining why they were
there, the officers asked for consent to go into the house. Kahn became nervous and stated,
“No, because Virgil wouldn’t appreciate it.”
           Detective Dorris observed trash bags by the side of the door containing refuse that was
indicative of methamphetamine manufacture. After a search warrant was obtained, they
entered the house and Dorris searched what appeared to be a master bedroom in the
northwest part of the main residence. The witness searched the closet in the bedroom and
found men’s clothing. A search of the dresser in the bedroom revealed men’s and women’s
clothing and a letter from the Department of Public Safety addressed to Appellant. The
detective found numerous items associated with methamphetamine manufacture in the master
bedroom. Furthermore, there was evidence of methamphetamine production in the living
area, the master bedroom, and the detached garage apartment.
           The parties stipulated that methamphetamine in the amounts of 2.18 grams and 76.13
grams were found in the residence. The lesser amount was found in a first aid kit in a locker
which was in a bedroom closet of the garage residence apartment. The larger amount was
found in the living room in an ice chest.
           Lisa Petty testified on Appellant’s behalf. She stated that Appellant was her uncle and
she had lived at the house on Graham Street for a period during 2003. She stated that
Appellant moved in with a woman named Simone at a location on the other side of Houston. 
She had seen a man and a woman at the house and she believed Appellant had rented the
house to them. She thought Appellant had moved in with the woman in the early part of
April.
 

           Kelly Waltmon stated that he was a project manager for Brand Services, a scaffolding
company. Appellant had worked for him prior to being hospitalized for cancer. Waltmon
was aware that Appellant had moved out of his Baytown house and was living “on the other
side of town.”
           Tony Herrington testified that he worked for Brand Services. Appellant had worked
with him at the company for two or three years. Herrington did not believe Appellant lived
at the house on Graham Street in mid-June of 2003. He drove by Appellant’s house on
numerous occasions to visit another employee who lived on the same street and he never saw
Appellant or his vehicles at the residence.
           Simone Crutcher testified that Appellant had been hospitalized with cancer. She took
him home from the hospital and they originally lived in Appellant’s house on Graham Street
for about a month. They then moved to her house in Sharpstown, Texas. She took Appellant
to his house where they gathered some clothes; although, they left some clothes at the house. 
She had last been at the house at the end of May. She did not notice anything unusual or
illegal occurring at the house. She was privy to the rental arrangements with the two renters
and she knew that Appellant had told them not to engage in any illegal conduct.
           James Lamar Stutts testified that he had been arrested by the Baytown Police
Department outside the residence on Graham Street on June 17, 2003. He pleaded guilty to
the possession of methamphetamine charges arising out of that incident and received deferred
adjudication. Eventually, he lost his probationary status and was sentenced to prison. Stutts
related that he and Donna Kahn were renting different portions of the entire residence from
Appellant. Appellant was living across town with his friend Simone. The witness stated that
he had last seen Appellant a month prior to Stutts’ arrest at the house. Stutts testified that
Appellant had not been involved in the manufacturing of the methamphetamine at the
residence.
           Appellant testified on his own behalf. He related that he had served time in prison for
possession of methamphetamine and he had been addicted to methamphetamine in the past. 
Appellant stated that he did not know that the methamphetamine had been manufactured at
his house. He testified that he was last in the house in the middle of May. He rented the
house to Stutts and Donna Kahn. Appellant explained that he had been groggy due to his
medication, thereby missing the appointment with his parole officer at his house. He stated
that he called his parole officer on the 18th of June because his brother called him and told
him that police had been at the house on the 17th. Appellant testified that he had warned
Stutts and Kahn not to cause trouble because he was continuing to use his house as his parole
address.
II. DISCUSSION
           In Issue Nos. One, Two, Five, and Six, Appellant asserts that the evidence is both
legally and factually insufficient to support the conviction. Specifically, Appellant maintains
that the State did not possess enough evidence to affirmatively link him to the drugs found
in the residence, and the evidence did not sufficiently establish that he had knowledge of the
fact that there were drugs in his home.
           In reviewing the legal sufficiency of the evidence, we are constrained to view the
evidence in the light most favorable to the judgment to determine whether any rational trier
of fact could find the essential elements of the offense, as alleged in the application
paragraph of the charge to the jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim.
App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More
particularly, sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d
234, 239-40 (Tex. Crim. App. 1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           When conducting a review of the factual sufficiency of the evidence, we consider all
of the evidence, but we do not view it in the light most favorable to the verdict. Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Levario v. State, 964 S.W.2d 290, 295
(Tex. App.--El Paso 1997, no pet.). We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the evidence that
tends to disprove that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct.
100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of the evidence
may allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in
a case where the defendant has offered contrary evidence, he may argue that the finding of
guilt is against the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d
at 11. Although we are authorized to set aside the fact finder’s determination under either
of these two circumstances, our review must employ appropriate deference and should not
intrude upon the fact finder’s role as the sole judge of the weight and credibility given to any
evidence presented at trial. See Johnson, 23 S.W.3d at 7. We are not free to reweigh the
evidence and set aside a verdict merely because we feel that a different result is more
reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d
at 135.
           Also in conducting a factual sufficiency review, we view the evidence in a neutral
light to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. We set aside the fact finder’s verdict only if (1) the evidence supporting the verdict,
when considered by itself, is too weak to support the finding of guilt beyond a reasonable
doubt; or (2) evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Zuniga v. State, 144 S.W.3d
477, 484-85 (Tex. Crim. App. 2004). In the second instance, evidence of guilt can
“preponderate” in favor of conviction but still be insufficient to prove the elements of the
crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can
“outweigh” the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. Id. at 485. However, our factual sufficiency review
must be appropriately deferential so as to avoid substituting our judgment for that of the fact
finder. Clewis, 922 S.W.2d at 133. Accordingly, we are authorized to set aside the jury’s
finding of fact only in instances where it is manifestly unjust, shocks the conscience, or
clearly demonstrates bias. Id. at 135. If the evidence is factually insufficient, we remand to
the trial court for a new trial. Id. at 133-35.
           A person commits the offense of possession of a controlled substance if he knowingly
or intentionally possesses it. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon
2003). The State must prove the accused exercised actual care, custody, control, and
management over the contraband and that he knew the substance he possessed was
contraband. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). These elements
may be established by circumstantial evidence. McGoldrick v. State, 682 S.W.2d 573, 578
(Tex. Crim. App. 1985). When the accused is not in exclusive possession or control of the
place where the contraband is found, the State must prove independent facts and
circumstances affirmatively linking him to the contraband--the evidence must establish the
accused’s connection with the contraband was more than just fortuitous. Brown, 911 S.W.2d
at 747. An affirmative link generates a reasonable inference that the accused knew of the
contraband’s existence and exercised control over it. Id.
           The number of factors linking an accused to the contraband is not as important as their
logical force in establishing the elements of the offense. See Jenkins v. State, 76 S.W.3d 709,
713 (Tex. App.--Corpus Christi 2002, pet. ref’d); see also Jones v. State, 963 S.W.2d 826,
830 (Tex. App.--Texarkana 1998, pet. ref’d); Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.--Houston [1st. Dist.] 1994, pet. ref’d). The baseline is that proof amounting to a strong
suspicion or even a probability of guilt will not suffice. See Hall v. State, 86 S.W.3d 235,
240 (Tex. App.--Austin 2002, pet. ref’d). There must be an affirmative link between an
accused and the drugs to the degree that a reasonable inference may arise that Appellant
knew that the drugs existed and where they were kept. See Gutierrez v. State, 628 S.W.2d
57, 60 (Tex. Crim. App. 1982), overruled on other grounds, Chambers v. State, 711 S.W.2d
240, 247 (Tex. Crim. App. 1986). Ultimately, the question of whether the evidence is
sufficient to affirmatively link the accused to the contraband must be answered on a
case-by-case basis. Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet.
ref’d).
           The State maintains that it demonstrated that Appellant still retained control over the
house because when the officers questioned the individuals at the house, they were told that
Appellant was not there. Further, it was stated that Appellant would not appreciate them
searching the house.
           The State argues that Appellant displayed a consciousness of guilt by his actions
immediately after the search of the house. The day after the search, Appellant called his
parole officer and told her that he had moved out of his house and he had learned that the
people in this house had been producing methamphetamine. The State reasons that there was
no evidence how Appellant knew that had occurred. Therefore, he must have known of the
drug production from his own knowledge.
           Next, the State suggests that the fact that items belonging to Appellant were found
throughout the home connected him to the drugs. The State points to the fact that mail
addressed to Appellant was found at the house. Further, male and female clothes were found
in the house, thereby linking Appellant to the drugs.
           The State maintains that the drugs were concealed and drug production paraphernalia
was found throughout the house accompanied with a strong odor which made it impossible
to have entered any room in the house without knowing of the drug production.
           Finally, the record revealed that Appellant had a prior history with narcotics, and in
particular, methamphetamine.
           Regarding the sufficiency of the evidence, and in viewing the evidence in the light
most favorable to the verdict, we find that the evidence is legally sufficient to support the
conviction. There was evidence from one officer that Donna Kahn had stated that Appellant
had left the residence the day before and that he would not appreciate the search of his house. 
Given the odor, disarray, and extensive indications of drug production throughout the house,
one could surmise that the conditions were existent the day before the police search. That
coupled with the State’s other contentions causes us to find that the evidence is legally
sufficient.
           We reach a different result regarding the factual sufficiency of the evidence. This
same evidence, viewed neutrally, without favoring either side, provides far too tenuous a
connection to “affirmatively link” Appellant to the methamphetamine and so is too meager
to support a finding beyond a reasonable doubt that Appellant knowingly or intentionally
possessed marihuana.
 

           Appellant was never placed at the house when it was in the condition observed by the
police officers. The situation with the parole officer could be viewed in the light that
Appellant did not know of the drug activity at the house because he did not try to prevent her
discovery of it during her scheduled home visit. Numerous witnesses stated that Appellant
did not live in the house and he had moved across town. The existence of mail and clothes
at the house is not compelling given the fact that Appellant actually owns the house. We find
that the evidence is factually insufficient to affirmatively link Appellant to the
methamphetamine. We overrule Issue Nos. One and Five, but sustain Issue Nos. Two and
Six.
           In Issue No. Three, Appellant maintains the evidence is legally insufficient to support
his conviction under the law of parties. Where the evidence is sufficient to establish guilt as
a principal, the reviewing court need not examine whether the evidence is sufficient to
establish Appellant’s guilt as a party. See Black v. State, 723 S.W.2d 674 (Tex. Crim. App.
1986). Issue No. Three is overruled.
           In Issue No. Seven, Appellant argues that the evidence is legally insufficient to
support the conviction because the State failed to prove that he possessed the drugs long
enough to terminate his control over them. Given the prior discussion where we found that
Appellant intentionally and knowingly possessed the contraband, we overrule Issue No.
Seven.
 

           Having sustained Appellant’s Issue Nos. Two and Six, we do not reach the remaining
Issue Nos. Four and Eight. We reverse Appellant’s conviction and remand this cause for a
new trial.
                                                                  RICHARD BARAJAS, Chief Justice

February 23, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Publish)